## No. 21232.

Western Colorado Power Company, a Colorado Corporation *v.* The Public Utilities Commission of the State of Colorado, Henry E. Zarlengo, Ralph C. Horton, and Howard J. Bjelland, the individual members of said commission, and Delta-Montrose Rural Power Lines Association of Delta, Colorado, a Colorado Corporation.

(428 P.2d 922)

Decided June 12, 1967.     Rehearing denied July 17, 1967.

IRVINE and BAUCOM, LOESCH and KREIDLER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT P. FULLERTON, Assistant, for defendant in error The Utilities Commission of the State of Colorado, and the Individual Members Thereof.

RODERICK N. STEWART, RAPHAEL J. MOSES, for defendant in error Delta-Montrose Rural Power Lines Association.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THE parties will be referred to as follows: plaintiff in error, Western Colorado Power Company, as Western; The Public Utilities Commission as the P.U.C.; and Delta-Montrose Rural Power Lines Association of Delta, Colorado, as Delta-Montrose.

Western is here on writ of error to review a judgment of the district court of Montrose County which affirmed an order of the P.U.C. The P.U.C. order followed lengthy proceedings which resulted from the

filing by Delta-Montrose of an application for issuance of a Certificate of Public Convenience and Necessity to supply electrical energy in a large area covering parts of Delta, Montrose, Ouray, San Miguel, Hinsdale and Gunnison Counties. The major portion of the application made by Delta-Montrose was granted by the P.U.C. and the P.U.C. order was sustained by the district court.

Generally, it was alleged in the application filed by Delta-Montrose that it is a co-operative corporation organized under C.R.S. 1953, Chapter 31, Article 20, under date of August 20, 1938; that it is engaged in distribution of electrical energy at wholesale and retail to customers in the above named counties; that it is financed by the Rural Electrification Administration; that its assets and liabilities are as set forth in the application; that it has the means and ability to serve the area and the proposed new customers; that the area for which the certificate is requested is bounded by areas served by other co-operatives; and that Delta-Montrose and Western both serve in the area covered by the application.

Western protested the application, denying its basic allegations and alleging that Western was already certificated in all or nearly all of the areas for which Delta-Montrose sought certification. Western claimed that its facilities were constructed to serve the entire area, and that Western serves and stands ready to serve the public in the areas requested by Delta-Montrose. Western alleged that Delta-Montrose was and should be authorized to serve its members only.

The P.U.C. held hearings on these issues on October 17 and 18 and December 12 and 13, 1961. On May 24, 1962, the P.U.C. rendered its decision No. 58643. The decision consists of *Statements* made by the P.U.C. extending from page 468 to 478 of Volume III of the record of the P.U.C., together with its *Findings* extending from page 478 to 483 of Volume III. We shall quote

therefrom only such parts of the *Statement* and *Findings* as we find necessary in the discussion herein. Pertinent parts of the *Statements* of the P.U.C. are as follows:

"* * * Western holds various certificates of public convenience and necessity from this Commission, and copies of these certificates were introduced as Exhibits G to DD, inclusive. These certificates range in time from January 1920 to November 1959. These are not all of the certificates held by Western, but are the ones that are pertinent to the area involved in the application of Delta-Montrose.

"Western holds various franchises for service in incorporated cities and towns in Delta, Montrose and Ouray Counties. Delta-Montrose is not seeking a certificate in any incorporated city or town. However, Delta-Montrose is seeking to have certificated to it territory in which Western claims it has been serving as a public utility.

"According to applicant [Delta-Montrose] it proposes to seek a certificate of public convenience and necessity on an exclusive basis in any area where Western does not presently have distribution lines, and to serve on a non-exclusive basis with Western the areas in which it and Western presently have distribution lines. It would not seek to serve or to have certificated to it any territory presently served by Western where it does not now have distribution lines. Territory where neither Delta-Montrose nor Western have lines, Delta-Montrose wants as additional territory for its exclusive service. In general, Delta-Montrose has extended this area to take in all the territory not presently being served by either utility up to the boundaries claimed by other utilities, * * *." (P.U.C. Record, p. 471.)

"* * * Despite the fact that there has been an extension agreement between Applicant and Western, we, nevertheless, are confronted with the fact that certain of the distribution lines are intermingled, and in many instances there is a duplication of facilities. As has been

stated in this record, it is now the duty of this Commission to do the best it can to arrive at an answer to the problem.

"Whatever the reasons that might be advanced as to how Delta-Montrose was able to connect and serve over 2,000 customers in an area of service claimed by another public utility are beside the point, since we are today faced with the fact that now both are public utilities, operating in many instances side by side. Delta-Montrose has proposed that it be granted a certificate to render service as a public utility in an area exclusive to itself where it is the only utility presently serving. In view of the facts as we find them today, we feel that there is merit of this contention, and we will designate in the Appendix attached to our Order herein an area for exclusive service to Delta-Montrose. However, we do not believe that all of the territory sought as an exclusive area should be granted to Applicant. There is testimony in this record that much of this area is presently unserved, and Delta-Montrose admittedly has no lines or customers therein, and apparently no prospects for such in the foreseeable future. The granting of additional exclusive territory so as to enable Applicant to have a common boundary with other utilities is not justified. At this time we see no merit in allocating to an applicant large sections of territory that may or may not require electric service. At such time as there is a need for service in these unallocated areas, Delta-Montrose or any other applicant may petition to render the service. The facts as presented at that time would necessarily govern the granting of a certificate to serve.

"Delta-Montrose has also elected in its application to delineate certain areas within which it admits that Western is presently rendering service, and within which it does not seek to serve. These areas include all of the cities and towns within which Western presently holds franchises and is authorized by this Commission

by certificates of public convenience and necessity to exercise the franchise rights, as well as certain other areas.

"There is a third area within which Delta-Montrose proposes to render electric service in conjunction with Western since both have lines intermingled within the territory. Delta-Montrose has suggested that as to this non-exclusive area, the Commission prescribe a method of operation similar to that set forth in our Decision No. 47074, of January 7, 1957, in Application No. 13576, of Union Rural Electric Association, Inc. By this decision, the Commission permitted the parties, without further authority from the Commission to make extension of their facilities or extensions in the aggregate, which do not exceed 300 feet in length. The Commission also prescribed the procedure to be followed in the event both parties were more than 300 feet distant from a prospective customer. We feel that this type of procedure is applicable in the non-exclusive areas in the instant matter, and our Order will so provide." (P.U.C. Record, pp. 473, 474.)

The order of the P.U.C. was to the effect that Delta-Montrose was a public utility and would now be "* * * authorized to distribute electricity in both 'exclusive' and 'non-exclusive' territory in certain areas in Montrose, Delta, Gunnison and Ouray counties described in the Appendix attached hereto, which, by reference, is incorporated herein and made a part of this order, * * *" (P.U.C. Record, p. 468.) The appendix referred to awarded "exclusive" territory to Western; "exclusive" territory to Delta-Montrose; and set apart certain other areas called "non-exclusive" in which Delta-Montrose and Western were both authorized to continue the service which each had theretofore been rendering. As already indicated, the judgment of the district court sustained the order of the P.U.C.

As grounds for reversal of the judgment, Western

alleges numerous errors by the P.U.C. and the district court. They may be summarized as follows:

I. The P.U.C. wrongfully revoked prior certificates of public convenience and necessity which had been awarded to Western. These certificates constitute interests in property and thus Western has been deprived of its property without due process of law.

II. The P.U.C. disregarded the criteria of public convenience and necessity which have been required by this Court. The 1961 legislative amendments to the statutes governing public utilities (Public Law 245, the pertinent parts of which now appear as C.R.S. 1963, 115-1-3 and 115-5-1) did not strike down these criteria. The P.U.C. arbitrarily ignored Western's evidence of satisfactory and adequate service, and the P.U.C. further ignored the fact that Delta-Montrose has failed to prove that public convenience and necessity requires certification of Delta-Montrose rather than Western.

III. The order of the P.U.C. is capriciously unfair and irregular. The P.U.C. applied a double standard to the competing utilities. Delta-Montrose was awarded hundreds of United States Government Survey Sections which were not being served by either utility, while Western was limited to those Survey Sections in which it had *existing* facilities. In its findings of fact, the P.U.C. found that there was no necessity for allocating much of the territory sought by Delta-Montrose to anyone, and yet in its order it in fact allocated this vacant and unserved territory exclusively to Delta-Montrose. The P.U.C. clearly was trying to create a special category for Delta-Montrose. This was discriminatory, unfair and capricious.

The argument of Western that the order and judgment complained of deprive it of its property without due process of law, directs attention to the following portion of the P.U.C. *Statement*:

"* * * It is the desire of the Commission, as previously indicated, to eliminate duplication and competition be-

tween Applicant and Western, and so in our Order to follow, we will provide that the certificate to be issued herein will supersede any prior certificates in the territory covered by the instant application and any conflicts with prior certificates are to be resolved in favor of the certificate to be issued herein." (P.U.C. Record, p. 476.)

And the *Findings* issued by the P.U.C. pursuant to its statement of the facts also contain this language:

"That the Order to follow herein, granting a certificate of public convenience and necessity to Delta-Montrose, should supersede any prior certificates of public convenience and necessity in the territory located outside the boundaries of cities and towns covered by the Appendix, and any conflicts with prior certificates should be resolved in favor of the certificates to be issued herein." (P.U.C. Record, p. 480.)

The record shows that Western had previously been granted numerous certificates of convenience and necessity to supply electrical energy. Most of the areas included in the prior certificates are described by locality names which have established meaning to those who are familiar with the area, and by reference to terrain features such as rivers and valleys. Other certificates had been awarded to Western for the purpose of granting authority to render service under franchises given to Western by various incorporated municipalities.

▮ Insofar as any of Western's prior certificates granted Western rights to serve in precisely defined areas, those rights were property rights which may not be taken from Western except by due process of law. Therefore, to the extent that the P.U.C. order superseded any previous certificates *expressly* granting Western the exclusive right to serve in specifically described areas, the order was invalid and must be vacated.

▮▮ We deal next with the "non-exclusive" areas marked out by the order under review here. Regulated monopoly, as we have often reiterated in our case law,

is the statutory scheme in this state. There is no place in the law of "regulated monopoly" for the "non-exclusive" areas set up by the P.U.C. order in this case. As we have already indicated, the evidence shows that Western expanded into many of these so-called "non-exclusive" areas at a time when it, and *only* it, had the statutory authority to expand into the areas as a public utility. Delta-Montrose expanded into the same areas at a time when it was still holding itself immune from state regulation, and Delta-Montrose thus acquired no protected territorial rights in these areas as a public utility. Insofar as the "non-exclusive" areas were already being adequately served by extensions which had been made by Western under its statutory expansion authority at the time Delta-Montrose entered the areas in direct competition with Western, the P.U.C. should have granted a certificate to Western in those areas on an *exclusive* basis, subject to the limitations hereafter set out. On the other hand, where in the "non-exclusive" area Delta-Montrose was the utility predominantly serving, then that portion of the territory should have been exclusively certificated to Delta-Montrose, subject to Western's right to retain its present customers in that area.

We hold that the 1961 act of the legislature did not destroy the holding of this Court in *Public Serv. Co. v. Public Util. Comm'n.*, 142 Colo. 135, 350 P.2d 543, *cert. denied*, 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50. The effect of the 1961 act was prospectively to establish electrical co-operatives as public utilities and to give them a regulated monoply status as of that date in those areas in which they were rendering service on an exclusive basis. The legislative act, however, did not purport to affect the contractual rights between co-operatives and their members which were created at a time when the co-operatives did not enjoy the status of public utilities, and thus in the instant action Delta-Montrose may continue to serve all members who were receiving

service prior to the effective date of its becoming a public utility, regardless of any exclusive certificates granted to Western.

We come finally to Western's objection to the territorial certificates granted to Delta-Montrose. Insofar as Western has extended its facilities in accordance with the 1961 act and in accordance with C.R.S. 1963, 115-5-1, it, of course, obtained new service areas which are protected by the doctrine of regulated monopoly. But we do not view the statutes as giving Western an exclusive property right to expand in the future into uncertificated territories which would forever bar another public utility from being certificated in such contiguous uncertificated territory if in the judgment of the P.U.C. it should later appear proper to grant such a certificate, and if the certificated utility had not yet expanded into that uncertificated area. The purpose of the statute, as we view it, was a housekeeping one. The legislature sought to permit extensions without further application outside certificated territory which is contiguous to certificated territory, when the extensions are necessary in the ordinary course of business. But where Western had not expanded its actual service into contiguous territory, that territory remained open for certification by the P.U.C. in accordance with its usual standards. We held in *Public Serv. Co. v. Public Util. Comm'n., supra,* that a Rural Electric Association may not expect to have a service area carved out for it from areas already *certificated* to other utilities. But when Delta-Montrose became a public utility, whether by statute or by a change in its charter and by-laws, it was then on an equal footing with Western insofar as *uncertificated* territory was concerned. That territory remained open and could be certificated to whomever the P.U.C., exercising its expertise, determined was best able to serve the territory. We find no error in granting a certificate to Delta-Montrose covering previously uncertificated territory, even though such territory may

extend to and touch the very borders of areas previously certificated to Western. As a result of the 1961 legislation, electrical co-operatives acquired authority to expand into those areas which had not already been pre-empted by another public utility. The expansion authority thus acquired by co-operatives is *no less and no greater* than that belonging to other public utilities of like character.

The judgment of the district court is reversed and the cause remanded with directions to order the Commission to vacate the order entered by it, and to enter a new order consistent with the views expressed in this opinion, and if it deems such necessary, to hold further evidentiary hearings.