No. 21985.

WESTERN POWER AND GAS COMPANY, THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO, AND HENRY E. ZARLENGO, RALPH C. HORTON AND HOWARD S. BJELLAND, INDIVIDUALLY AND AS MEMBERS THEREOF *v.* SOUTHEAST COLORADO POWER ASSOCIATION, INC.
(435 P.2d 219)

Decided December 11, 1967. Rehearing denied January 8, 1968.

PETERSON, EVENSEN AND MATTOON, for plaintiff in error Western Power and Gas Company.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT LEE KESSLER, Assistant, for plaintiff in error The Public Utilities Commission of the State of Colorado.

CARL M. SHINN, JOHN P. THOMPSON, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THE parties will be referred to as follows: Western Power and Gas Company as Western, the other plaintiffs in error as the Commission, and the defendant in error as Southeast.

The controversy involves a dispute between Western and Southeast concerning the right to supply electrical energy to a microwave relay station which had been installed by the American Telephone and Telegraph Company in Otero county on real estate at a location which we will identify as Section 3 — the full legal description being immaterial to any issue in this case. The action originated before the Commission upon the filing of a complaint by Southeast in which it alleged that it was a public utility supplying electrical energy in Otero county in the area identified as Section 3, and that Western planned and intended to expand and extend its power lines and facilities into Section 3 in order to serve the relay station above mentioned. Southeast further alleged that such an expansion of facilities by Western would be without a certificate of conven-

ience and necessity; that the extension contemplated would not be "contiguous" to Western's existing power lines; and that it would amount to an invasion by Western of territory being adequately served by Southeast — all in violation of the applicable sections of the law governing the activities of those functioning as public utilities, particularly C.R.S. 1963, 115-5-1. These allegations were denied by Western and it asserted the right to serve the station under a certificate of convenience and necessity issued to it on September 21, 1936, under which it was granted the right, and imposed with the duty, to serve the rural areas of Otero county, and to make such extensions as might be necessary and practicable for the purpose of serving future requirements of the inhabitants.

Following a full hearing the Commission entered its final decision in favor of Western. It is disclosed by the record before the Commission that one of its members dissented. The decision was authorized by Commissioner Zarlengo. Commissioner Horton stated his views as follows:

"I concur in the finding that Western Power and Gas Company have the authority from the Commission to supply electric service to American Telephone and Telegraph Company. However, I did not arrive at that conclusion by the same method as Chairman Zarlengo but I do concur with the end result."

On review of this decision the district court reversed the Commission and ordered entry of a decision sustaining the position of Southeast.

Western is here on writ of error seeking reversal of the judgment of the district court with directions to enter judgment sustaining the decision of the Commission.

The following historical background is essential to an understanding of the legal issue before us. Western and its subsidiaries had been in the business of generating and distributing electrical energy and power to the public for approximately sixty-five years. It fur-

nished electrical service to the inhabitants of Otero county during all that time. It held franchises to serve in various towns, and from the creation of the Public Utilities Commission it had been the recipient of various certificates of convenience and necessity granting to it the right to render such service as well as imposing upon it the duty to serve such communities and areas contiguous thereto. In 1936 it was granted a certificate of public convenience and necessity to serve the rural inhabitants and areas of Otero county by Public Utilities Commission Decision No. 8397. There was no evidence that it ever failed or refused to render that service.

On the other hand Southeast Colorado Power Association Inc. was organized as a cooperative association and for many years served only its own members. As far as the record shows it had never sought, nor did it hold, any certificates of public convenience and necessity from the Commission. The status of Southeast as a public utility was first established by act of the legislature in 1961. It was admitted in the record that Southeast does not have a certificate to serve the public in the specific area involved, and the record is undisputed that Western Power is the holder of a certificate authorizing it to serve the rural areas of Otero county.

In order to serve its members Southeast in 1952 constructed a single phase line in a southerly direction from the city of La Junta. This line runs through Section 3 where the American Telephone and Telegraph Company microwave relay station was to be constructed — which is now completed and is presently receiving "three-phase" service under a contract with Western. Both Western and Southeast have "three-phase" power lines extending eastward from La Junta for several miles but no such line of either company was closer than approximately eight to ten miles of Section 3. Southeast's "single-phase" line into Section 3 was suitable to supply electrical requirements for ordinary household and small motor uses. "Three-phase"

service was required for the operation of the microwave relay station.

During 1963, the parties were advised by American Telephone and Telegraph Company that it intended to install a microwave relay station alongside Southeast's line, approximately ten miles south of the "three-phase" lines of Western Power and Southeast located east of La Junta; and that this relay station would require "three-phase" electric service. It inquired of both parties what the cost of this electric service would be, assuming a given volume of use and a given type of regularity of volume use year-round (or, load factor). Both parties are subject to PUC rate regulation; both gave quotations.

Southeast filed this action before the Commission on January 21, 1964, while negotiations were pending between the two utilities and American Telephone and Telegraph Co. Two weeks thereafter Western and American Telephone and Telegraph Company entered into a contract in which Western agreed to supply "three-phase" power at the site of the relay station.

As already stated, two commissioners determined that Western had the right to supply the electrical requirements of the station. The decision went further, however, and the order of the Commission included the following:

"That the Complainant be, and it hereby is, ordered to allow Respondent to immediately make use of so much of its poles and facilities as may reasonably be necessary without physical duplication for the Respondent to provide adequate service to the American Telephone and Telegraph Company at the location hereinabove referred to; and, that the Complainant and the Respondent negotiate and mutually agree for a fair and just compensation to be paid by the Respondent to the Complainant for the use of its poles and facilities, as hereinabove ordered, on or before ninety (90) days from the date of this Order. If such agreement cannot be made both parties are hereby ordered to so notify the

Commission and a supplemental hearing will be held by the Commission to determine a fair and just compensation for such use.

"This Order shall become effective twenty-one (21) days from date."

Southeast argues that this portion of the Commission's order amounts to a deprivation of property without due process of law in violation of pertinent provisions of the state and federal constitutions.

We emphasize the fact that the trial court reversed the order of the Commission and in so doing held,

(1) That Southeast should have been granted a certificate to serve the relay station, and that the Commission erred in authorizing the service by Western; and

(2) That the order for joint use of power poles was invalid in that it deprived Southeast of its property without due process of law.

In considering point (1) above we hold that the trial court erred in ruling that Southeast should have been authorized to supply the electrical needs of the relay station. We think it sufficient to direct attention to *Western Colorado Power Co. v. Public Utilities Commission,* 163 Colo. 61, 428 P.2d 922, where we find the following pertinent language:

"Insofar as any of Western's prior certificates granted Western rights to serve in precisely defined areas, those rights were property rights which may not be taken from Western except by due process of law. Therefore, to the extent that the P.U.C. order superseded any previous certificates *expressly* granting Western the exclusive right to serve in specifically described areas, the order was invalid and must be vacated.

\* \* \*

"\* \* \* As we have already indicated, the evidence shows that Western expanded into many of these so-called 'non-exclusive' areas at a time when it and *only* it, had the statutory authority to expand into the areas

as a public utility. Delta-Montrose expanded into the same areas at a time when it was still holding itself immune from state regulation, and Delta-Montrose thus acquired no protected territorial rights in these areas as a public utility. * * *"

We next consider point (2) above as to whether the provision of the Commission pertaining to "joint use" should have been upheld by the trial court. The statutes under which the Commission acted read as follows:

C.R.S. 1963, 115-5-1(2). "Whenever the commission after a hearing upon its own motion or upon complaint, shall find that there is or will be a duplication of service by public utilities in any area, the commission shall, in its discretion, issue a certificate of public convenience and necessity assigning specific territories to one or to each of said utilities or by certificate of public convenience and necessity to otherwise define the conditions of rendering service and constructing extensions within said territories, and shall, in its discretion, order the elimination of said duplication, all upon such terms as are just and reasonable, having due regard to due process of law and to all the rights of the respective parties and to public convenience and necessity."

C.R.S. 1963, 115-4-5 reads as follows:

"JOINT USE OF EQUIPMENT AND FACILITIES. Whenever the commission, after a hearing had upon its own motion or upon complaint of a public utility affected, shall find that the public convenience and necessity require the use by one public utility of the conduits, subways, tracks, wires, poles, pipes or other equipment, or any part thereof, on, over, or under any street or highway, and belonging to another public utility, and that such use will not result in irreparable injury to the owners or other users of such conduits, subways, wires, tracks, poles, pipes or other equipment or in any substantial detriment to the service, and that such public utilities have failed to agree upon such use or the terms and conditions or compensation for the same,

the commission by order may direct that such use be permitted, and prescribe reasonable compensation and reasonable terms and conditions for the joint use. * * *"

 Admittedly, the activities of public utilities in rendering service to the public are subject to reasonable regulations in the exercise of the police power. We find nothing unreasonable in the "joint use" order of the Commission and hold that it was a proper exercise of the police power within the authority expressly conferred by the statutes above quoted. Where there is a seeming conflict between an assertion that one is deprived of his property without "due process of law" on the one hand, and a reasonable exercise of the police power on the other, the latter takes precedence and a violation of "due process" cannot be asserted to stay the legitimate exercise of police power. In holding to the contrary the trial court erred. *Cottrell v. Teets,* 139 Colo. 558, 342 P.2d 1016. In *The Colorado Anti-Discrimination Commission v. Case, etc.,* 151 Colo. 235, 380 P.2d 34, this court said, *inter alia:*

"Thus the constitutionally protected rights in property, for which respondents contend, are subject to regulation by a proper exercise of the police power of the state. If a statute purporting to have been enacted to protect the public health, morals, safety or common welfare, has no real or substantial relation to these objects, and for that reason is a clear invasion of the constitutional freedom of the people to use, enjoy or dispose of their property without unreasonable governmental interference, the courts will declare it void. *Chenoweth v. State Board of Medical Examiners, et al.,* 57 Colo. 74, 141 Pac. 132. It is the duty of the court to examine the act in question and to determine whether it has a substantial relation to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects.

"We hold that the Act here in question has a sub-

stantial relation to a legitimate object for the exercise of the police power, and that it is appropriate for the promotion of that object. * * *"

 The argument advanced by Southeast that there was no valid decision before the Commission — which is based upon the comment of commissioner Horton to the effect that he concurred "with the end result" — is without merit, since any result other than the one with which he concurred would have been without support in the record.

The judgment is reversed and the cause remanded with directions to enter judgment sustaining the order of the Commission.

MR. JUSTICE PRINGLE dissents.

MR. JUSTICE KELLEY not participating.

MR. JUSTICE PRINGLE dissenting:

I respectfully dissent.

I would order the trial court to remand the matter to the Public Utilities Commission for the purpose of entering a *valid* order. It is my view that there is no *valid* order of the Public Utilities Commission dismissing the complaint of Southeast Colorado Power Association, Inc. The purported order in this case is signed by Commissioner Zarlengo alone. His findings to support that order appear in his opinion. Commissioner Bjelland dissented. Commissioner Horton in a separate opinion concurred in the "end result" reached by Commissioner Zarlengo in his opinion, but Commissioner Horton made it clear that he did not reach that "end result" by the same method that the Commissioner purportedly writing for the Commission did. Why Commissioner Horton thinks Western Power and Gas Company should be given the preference to serve the customer rather than Southeast we are not told.

There is, in my view, therefore, no agreement in this

case of two Commissioners as to any reason for the purported order. It could very well be that Commissioner Horton's "end result" was dictated by conclusions not legally supportable in which event his concurrence in the result would have no legal efficacy, for administrative orders in this state have no validity unless supported by legally acceptable reasons. *Sherratt v. Rocky Mountain Fuel Co.,* 94 Colo. 269, 30 P.2d 270.