No. 22952.

THE TOWN OF FOUNTAIN, A MUNICIPAL CORPORATION *v.*
THE PUBLIC UTILITIES COMMISSION OF THE STATE OF
COLORADO, AND MOUNTAIN VIEW ELECTRIC ASSOCIATION,
INC., A CORPORATION.

(447 P.2d 527)

Decided November 25, 1968.    Rehearing denied December 16, 1968.

304

GIBSON, GIBSON, COLE & GERDES, FILLMORE S. GIBSON, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, ROBERT LEE KESSLER, Assistant, for defendant in error Public Utilities Commission.

TULLIS, LAURA and JAMES, ROBERT JAMES, for defendant in error Mountain View Electric Association, Inc.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THE Town of Fountain (referred to as Fountain) brings this writ of error to a judgment of the district court affirming a decision of the Public Utilities Commission, which will be referred to as the P.U.C. Mountain View Electric Association, Inc., is also a defendant in error, and will be referred to as Mountain View.

Fountain seeks review of a P.U.C. decision which awarded to Mountain View forty of the 85½ sections which the P.U.C. had in 1941 granted to Fountain under a Certificate of Public Convenience and Necessity. Fountain advances several points which may be consolidated into the single contention that the P.U.C. erred in awarding the forty sections to Mountain View without

proof that Fountain was providing inadequate service within the area. P.U.C. suggests that its decision is improper insofar as it orders the sale of certain facilities.

A preliminary statement of facts is required to put this case in its proper perspective. Fountain is a municipality located in El Paso County about twelve miles southeast of Colorado Springs. It began distributing electricity in 1925, and received a certificate for the surrounding area in 1941. With a few minor irregularities, its certificated area is a rectangle measuring about nine miles east to west, and ten miles north to south. Fountain lies near the center of the rectangle. About seven or eight miles northwest of Fountain lie the unincorporated communities of Security Village and Widefield. According to the maps received in evidence, Fountain's transmission lines traverse the rectangle diagonally from its northwest corner to Fountain, with one line running two miles beyond it. Several tap lines run a few miles to the east from the diagonal trunk lines. Fountain has no lines in either the southern one-third or the eastern one-half of its certificated area.

Mountain View is an incorporated rural electrical cooperative financed by the Rural Electrification Administration. Formed in the late 1930's by residents living on the mesa north of Fountain, it expanded into parts of six counties. Included in the membership of Mountain View and served by it were customers within Fountain's certificated territory.

In 1958 Mountain View sought public utility status and P.U.C. thereupon granted a certificate of Public Convenience and Necessity which authorized service in the counties then served by Mountain View but not within Fountain's certificated territory. Its service area, at Mountain View's request, was extended in 1962 to include an area which formerly lay between the certificated areas of Fountain and Mountain View. Additionally, the 1962 order provided that public convenience and necessity required Mountain View's continued opera-

tion of its facilities within Fountain's certificated area.

Fountain objected to the latter order on the ground that it had not been given notice of the proceedings. After appropriate proceedings in the district court, the parties stipulated to return the case to the P.U.C. for a full hearing, where Mountain View produced evidence tending to prove that Fountain had inadequately served the eastern half of its certificated area, and that there was substantial duplication of services at other points within Fountain's service area. In its decision the P.U.C. awarded to Mountain View substantially the eastern half of the territory originally certificated to Fountain. It also ordered Mountain View to sell to Fountain certain of its existing facilities located within the western half of Fountain's original certificated territory, which by this order of the Commission became Fountain's present certificated territory. Fountain seeks a review of that decision insofar as it took from Fountain the portions of it original certificated territory and awarded them to Mountain View.

I.

We will consider first Fountain's contention that the P.U.C. could not consistently with the doctrine of regulated monopoly reduce its certificated area. There can be no doubt that Fountain's right to serve within its defined area constitutes a property right which cannot be taken except by due process of law. See C.R.S. 1963, 115-5-1(2), and *Western Colorado Power Company v. Public Utilities Commission,* 163 Colo. 61, 428 P.2d 922. We held, moreover, in *Public Service Company v. Public Utilities Company,* 142 Colo. 135, 350 P.2d 543, *cert. denied,* 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50, that a rural electric association, which had just acquired public utility status, could not carve out a service area from territory already adequately served by two public utility companies which had expanded into the contested area. In addition, we affirmed in the latter case, the P.U.C. decision to grant a certificate to the extent

that it authorized the applicant to deliver increased volumes of energy to its members and customers, except members and customers in incorporated areas and in areas previously certificated.

According to Fountain, the principles which we announced in *Public Service Company, supra,* control our disposition of the instant case. In that case, however, as we expressly stated, there was a complete absence of proof that any additional service was required or desirable. The applicant was seeking a certificate to serve an area that "was virtually 100% served." Under the circumstances there, as we pointed out, the P.U.C. had no authority to grant a certificate to the applicant because the public convenience and necessity did not require the service.

Similarly, we concluded in *Western Colorado Power, supra,* that, to the extent that the contested P.U.C. order superseded any previous certificates, the order was invalid. But there, too, inadequacy of service was not an issue.

█ The rules of law which must guide our disposition of the instant controversy have been set out in *Public Utilities Commission v. Home Light and Power Company,* 163 Colo. 72, 428 P.2d 928. We said that a utility may apply for a certificate to serve in a certificated area if it appears that the certificated utility is either unwilling or unable to serve any existing or newly developing load within its certificated territory at rates approved by the P.U.C. See *Denver & Rio Grande Western Ry. Company v. Public Utilities Commission,* 142 Colo. 400, 351 P.2d 278.

██ Additionally, we note that according to the terms of C.R.S. 1963, 115-5-1(2), whenever the P.U.C., after a hearing, shall find that there is or will be a duplication of service within a given area, it shall in its discretion order the elimination of the duplication, having due regard to due process and to the rights of the respective parties, and to public convenience and

necessity. We held in the *Western Colorado Power* case that the enactment of this statute did not destroy the holding of the *Public Service Company* case, which we have just summarized. But neither did we intimate that under no circumstances may a certificated area be reduced. In a proceeding which results in the reduction of a previously certificated area, the requirements of due process are satisfied, under the terms of the statute and under our prior decisions, if there is substantial evidence in the record to support a finding that the certificated public utility is unwilling or unable to serve its certificated area and that public convenience and necessity require the change.

In the instant case, as we have already pointed out, after over twenty years of service, Fountain had lines in only nineteen of the 85½ sections it was authorized to serve. There was testimony that most of the lines were constructed in 1944, with only taps added after that. The P.U.C. found that in the late 1930's many residents living on the mesa north of Fountain were without electrical service. Financially unable to afford the contributions in aid of construction which Fountain required, they formed Mountain View, which was incorporated in 1941. While it was a rural cooperative not subject to P.U.C. regulation, Mountain View gradually expanded, until it served most of the area to the north, east and south of Fountain's certificated area. In addition, it extended lines into Fountain's area to 115 farms and residences and 21 irrigation customers, all members of the cooperative.

Its lines within Fountain's area parallel Fountain's lines to a certain extent. The Commission found some five areas of duplication of services, and described in detail several instances where the lines of the two companies actually crossed. Within the Fountain area, the Mountain View lines generally run from the northeast corner of the rectangle to Fountain and southward to the boundary of the area. There are also lines which

extend eastward and westward from the line to the south, and a line to the northwest from the Security Village area. In all, Mountain View has lines in thirty-two of the 85½ sections. Fountain has a line in only one of the forty sections awarded to Mountain View.

Much of the testimony is to the same effect that Fountain could not with any economical feasibility extend its services into the eastern half of its certificated territory unless it could acquire Mountain View's members and customers. That is, the intervening lines of Mountain View served customers which Fountain would need in order to make it economically feasible to serve customers farther to the east.

■■ With that testimony in mind, we note further that we have already held that a rural cooperative, which later gains public utility standing, may continue to serve all members who were receiving service prior to the effective date of its classification as a public utility. *Western Colorado Power Company v. Public Utilities Commission, supra.* We cannot require Mountain View to give up the customers which it had legally acquired within the eastern half of Fountain's certificated territory. In view of Fountain's inability to serve new customers in the eastern portion of its territory with any economic feasibility, unless it could also acquire Mountain View's present customers, it becomes clear that the Commission's action in modifying Fountain's certificate to exclude the eastern 40 sections and the certification of these sections to Mountain View was in the public convenience and necessity, and was not arbitrary and capricious.

Moreover, since Mountain View already has lines in nineteen of the forty sections awarded to it, any exension of Fountain's lines into the area would result in the duplication of services which the P.U.C. has the statutory duty to eliminate.

■■ We point out also that Mountain View extended service to many persons within Fountain's area

only after requesting and receiving releases from Fountain authorizing it to provide the services. One of the releases in the record includes a statement from Fountain that it was not practical to provide the requested services. Although the releases alone do not conclusively prove inability or unwillingness to serve, they are relevant to the question. See *Southeast Colorado Power Association v. Public Utilities Commission*, 163 Colo. 92, 428 P.2d 939. In addition, the fact that Mountain View served its members in the Fountain area since 1941 is evidence of public convenience and necessity. See *Public Service Company v. Public Utilities Commission, supra.*

▇▇▇ Other witnesses testified that they were without electrical service because they could not afford the excessive financial burden of the contributions in aid of construction required by Fountain. Mountain View, on the other hand, had facilities within sixty feet to one-quarter mile of the same witnesses. Under the circumstances the P.U.C. found that the contributions and advances required by Fountain were so large as to be tantamount to a denial of service to these potential consumers. There is substantial evidence in the record to support that conclusion.

Parenthetically, we do not construe the proceedings in this case, as Fountain suggests in one of its arguments, as an attack by Mountain View on the propriety of the initial issuance of Fountain's certificate. That approach has been effectively foreclosed by our holding in the *Southeast Colorado Power* case, *supra.*

▇▇▇ On the basis of the foregoing summary of the findings and the evidence in the record, we affirm the action of the P.U.C. to the extent that it granted a certificate to Mountain View to serve the contested forty sections. That the Commission's action is clearly in the public convenience and necessity is amply demonstrated by the evidence. We find no denial of due process of law.

## II.

The P.U.C. suggests that perhaps that part of the order requiring sale of facilities by Mountain View to Fountain should be modified in view of *Public Utilities Commission v. Home Light and Power Company, supra,* where we held that an order requiring the sale of certain facilities at net book value was improper as constituting a taking without just compensation. However, Mountain View does not contest the portion of the order here requiring it to divest itself at net book value of certain facilities lying within Fountain's modified certificated area, and we therefore do not disturb that portion of the Commission's order.

The judgment is affirmed.