No. 24365.

PUBLIC SERVICE COMPANY OF COLORADO, A COLORADO COR-
PORATION *v.* THE PUBLIC UTILITIES COMMISSION OF THE
STATE OF COLORADO, HENRY E. ZARLENGO, RALPH C. HOR-
TON, AND HOWARD S. BJELLAND, THE INDIVIDUAL MEMBERS
OF SAID COMMISSION, AND HOLY CROSS ELECTRIC ASSOCIA-
TION, INC., A CO-OPERATIVE CORPORATION.

(483 P.2d 1337)

Decided April 12, 1971.    Opinion modified and as modified rehear-
ing denied May 10, 1971.

LEE, BRYANS, KELLY & STANSFIELD, DONALD D. CAWELTI, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, WARREN D. BRAUCHER, Assistant, JOHN E. ARCHIBOLD, Assistant, for defendant in error Public Utilities Commission of the State of Colorado and the Individual Members Thereof.

W. E. PARKISON, RAPHAEL J. MOSES, for defendant in error Holy Cross Electric Association, Inc.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

PLAINTIFF in error, Public Service Company of Colorado, asserts that the trial court erred in affirming Decision No. 63781 of the Public Utilities Commission of the State of Colorado. Public Service argues that this P.U.C. decision in two respects is contrary to law and therefore should be reversed.

Defendant in error, Holy Cross Electric Association, Inc., applied to the P.U.C. for a certificate of public convenience and necessity to supply electric power in certain areas. Public Service protested the application. After hearings, the P.U.C. in Decision No. 63781, granted Holy Cross the right to render electric service in the "Colorado River Valley area" as described in paragraph

one of this decision. In 1946, by Decision No. 27071, the P.U.C. had granted Public Service the right to serve loads in excess of 100 kilowatts in this area. Decision No. 63781 insofar as it takes away from Public Service its certificated right to serve loads in excess of 100 kilowatts in this area is unlawful and therefore in this respect must be reversed.

The other challenged portion of Decision No. 63781 awards Holy Cross certificate authority to supply electric power in an area east of the Roaring Fork River between Carbondale and Glenwood Springs. Public Service takes the position that in 1956 in Decision No. 47039, this area was certificated to Public Service. We disagree with this contention and affirm this portion of P.U.C. Decision No. 63781.

I.

We first note that in *Public Utilities Commission v. Grand Valley Rural Power Lines, Inc.*, 167 Colo. 257, 447 P.2d 27, P.U.C. Decision No. 27071 was also in issue as was the nature of the right given to Public Service to serve customers who required an electric service of more than 100 kilowatts. In *Grand Valley*, we held that this grant of authority in P.U.C. Decision No. 27071 was a property right which could not be taken away from Public Service without the due process of notice and a full hearing. The right to give service under an existing certificate of public convenience and necessity is a property right under Colorado law and may not be affected except by due process of law. *Town of Fountain v. Public Utilities Commission*, 167 Colo. 302, 447 P.2d 527.

Our review of the record of proceedings before the Public Utilities Commission reveals no evidence to show that Public Service was unable or unwilling to continue to exercise the right, and accept the duty, to serve any loads in excess of 100 kilowatts which might locate within the area of Decision No. 27071. Also, there was no testimony or other evidence indicating that Public

Service had ever refused a request to serve in accordance with its certificated authority. These are the tests under the law which must be applied if certificated rights are to be taken from a utility. *Western Colorado Power Co. v. PUC*, 163 Colo. 61, 428 P.2d 922 and *Town of Fountain, supra.*

The P.U.C. findings indicate that the 100 kilowatt limit is unrealistic in the light of modern day needs of the average consumer in the area. Be that as it may, this finding is not enough to satisfy the requirement that Public Service be shown to be unable or unwilling to serve its certificated area at rates approved by the P.U.C. before its rights may be affected.

Therefore, P.U.C. Decision No. 63781 insofar as it takes from Public Service the right to serve loads in excess of 100 kilowatts must be vacated.

II.

In 1956, by Decision No. 47039, the P.U.C. approved the purchase by Public Service of the facilities of the Carbondale Light and Power Company. In 1959, by Decision No. 51545, the P.U.C. granted Public Service a certificate of public convenience and necessity to exercise franchise rights in the Town of Carbondale. At the time of purchase of the Carbondale facilities, service had been extended by Carbondale Light and Power Company from Carbondale toward Glenwood Springs along the *west* side of the Roaring Fork River.

About 1950, before the Public Service purchase, Holy Cross built lines between Carbondale and Glenwood Springs along the *east* side of the Roaring Fork River. Decision No. 47039, *supra,* describes the area at the time of purchase in 1956 in which Carbondale Light and Power Company had facilities. However, neither that decision, nor any other part of the record before us, indicates that Public Service had certificated rights to serve in any areas beyond the boundaries of the Town of Carbondale. That part of the facilities purchased by Public Service which were outside of Carbondale, toward

Glenwood Springs, were presumably an extension of the Carbondale system. An extension of this nature is authorized under C.R.S. 1963, 115-5-1. Such an extension, however, does not give Public Service the protection of monopoly afforded to a certificate holder except for the area completely and adequately served by Public Service by the extension. *See Public Service Co. v. P.U.C.,* 142 Colo. 135, 148, 350 P.2d 543. The record clearly shows that the area *east* of the Roaring Fork River was not completely and adequately served by Carbondale Light and Power Company in 1950, at which time Holy Cross constructed its lines in that area.

Since 1961, by law, (C.R.S. 1963, 115-1-3(2)), Holy Cross has been a public utility and, as such, stands upon an equal footing with other public utilities as to unserved and uncertificated areas. *Public Util. v. Home Light and Power,* 163 Colo. 72, 81, 428 P.2d 928. Without deciding whether *Home Light* should be applied retroactively, we do find that the underlying philosophy is applicable regarding the division of areas where existing lines of competing public utilities are in close proximity to each other. Under comparable facts, we stated in *Home Light*:

"[T]he P.U.C. has divided the areas in an attempt to allow each utility to maintain its present customers and to have its fair share of any expansion room that still remains. While this may not be entirely satisfactory to all parties, it was not an abuse of discretion. *Ephraim Freightways, Inc. v. Public Util. Comm'n.* [151 Colo. 596, 380 P.2d 228] . . . ."

█ We therefore find that the record supports the P.U.C. order which uses the Roaring Fork River as the boundary line for certificating the area in dispute between Public Service and Holy Cross. Existing customers of either utility are "frozen" within the area certificated to the other utility and we find that this is a reasonable provision and within the discretionary powers of the P.U.C. This part of the P.U.C. decision is, in our view,

beyond the challenge prerogative of Public Service.

▇ Finally, with regard to the Town of Carbondale area, Public Service notes that part of the area certificated to Holy Cross lies within the boundaries of the Town of Carbondale. Not having the town boundaries in the record before us, this point should be referred to the P.U.C. for correction, if this be the case. The Town of Carbondale is clearly the domain of Public Service by virtue of P.U.C. Decision No. 51545, *supra*.

Judgment of the district court is reversed in part, in accordance with Part I of this opinion, and affirmed in part in accordance with Part II of this opinion. This cause is remanded to the trial court for referral to the P.U.C. for amendment of Decision No. 63781 in accordance with this opinion.

MR. JUSTICE GROVES not participating.