Mr. Justice Day
delivered the opinion of the Court.
In this consolidated proceeding both parties were affected by a 1965 decision of the Public Utilities Commission of the State of Colorado (P.U.C. herein). They therefore sought review in the district court and from the judgment there sued out separate writs of error in this court. Grand Valley Rural Power Lines, Inc. will hereinafter be referred to as Grand Valley. The Public Service Company of Colorado will be hereinafter referred to as Public Service.
This particular proceeding had its origin when, in 1961, by an amendment to the Public Utilities Law (C.R.S. 1953, 115-1-3), the legislature declared associ *474 ations such as Grand Valley to henceforth be public utilities and to serve the general public under the jurisdiction of the P.U.C. Thus eligible for its own certificate of public convenience and necessity, Grand Valley filed its application for a certificate of public convenience and necessity to furnish electrical power to certain areas surrounding the City of Grand Junction, Colorado, and including parts of Mesa, Delta, and Garfield Counties. To the petition by Grand Valley, as amended in 1963, Public Service, on December 2, 1963, filed a protest. A hearing was held, and on March 11, 1965 the P.U.C. rendered its decision No. 64569. This decision, subsequently appealed to the district court of Arapahoe County, was modified and affirmed. While all parties accept as proper the modifications made by the district court, both Grand Valley and Public Service assign error to the balance of the findings of the P.U.C.
Inasmuch as the P.U.C. used its earlier 1946 decision No. 27071 as a forerunner to No. 64569 under review here, it may be helpful for a full understanding of this case to review briefly the history of electrical service in the areas here under scrutiny.
Grand Valley and Public Service have co-existed in the Grand Junction area since 1936, the time of Grand Valley’s incorporation. A series of informal non-duplication of service agreements were entered into, culminating in a series of petitions filed by Public Service between 1944-1946 for a certificate of public convenience and necessity to provide electrical service to portions of this area. The result of these petitions was a 1946 decision No. 27071. In that decision, the P.U.C. granted to Public Service the right to extend its electrical lines into the areas and territories contiguous to the municipalities of Grand Junction, Rifle, Fruita, Palisade, New Castle, Silt, Grand Valley and Debeque (the so-called “Grand Junction District”). No certificate was granted to Grand Valley, inasmuch as it was not a public utility, and was not therefore under the *475 jurisdiction of the P.U.C. The order did, however, provide that:
“[S]aid authorization to extend its [Public Service’s] lines and services is granted without prejudice to the right of Grand Valley, now serving certain rural districts in said area, to make available its electrical service without duplication of facilities of service by Public Service Company, to residents of said rural area living within that part of Grand Junction District which lies in Mesa County, who are not now served by Public Service or said Grand Valley.”
Grand Valley’s right to serve within the Grand Junction District was then restricted in two ways. First, it was not permitted to serve customers whose estimated electrical power requirements would at any time exceed 100 kilowatts (a so-called “Large Load Restriction”). The right to serve such customers was granted exclusively to Public Service. Grand Valley was also not permitted to serve designated areas around the towns of Debeque, Fruita, and Grand Junction. Therefore, in addition to the “Large Load Restriction” the decision No. 27071 resulted in the certification to Public Service of the “Exclusive Grand Junction Area,” and a designation of a much larger “Grand Junction District” which was to be served, without duplication of facilities, by both Public Service and Grand Valley. The testimony presented at the hearing before the Commission indicated that there has been general compliance with the provisions of this decision by both parties.
Using the above decision No. 27071 as a starting point or benchmark, both Grand Valley, in its petitions, and Public Service, in its protest, proposed changes and deviations. Many of the specific findings of the P.U.C. have not been challenged by either party, and they need not be further discussed here. Also, the P.U.C. determination that each party would be required to sell that portion of its facilities in areas certificated to the other by the year 1975 at “net book value” was set aside *476 by the district court. And inasmuch as that ruling is in accord with Public Utilities v. Home Light & Power, 163 Colo. 72, 428 P.2d 928 (1967), we affirm that portion of the decision. The effect of the district court modification is to “freeze” the facilities of both Public Service and Grand Valley in areas herein certificated to the other. Each may continue to serve the needs of existing customers in such areas, but may not extend such service to new customers, in accordance with the guidelines set forth in Home Light, supra.
ARGUMENTS OF PUBLIC SERVICE
The basic contention of Public Service in its writ of error is that the P.U.C. unlawfully granted to Grand Valley the right to serve (through a certificate of public convenience and necessity) areas previously certificated to or served by Public Service. We have previously held that a certificated area constitutes a property right which cannot be taken except by due process of law. See Fountain v. Public Utilities, 167 Colo. 302, 447 P.2d 527 (1968) ; Western Colorado Power Co. v. Public Utilities, 163 Colo. 61, 428 P.2d 922 (1967). See also the statutory provisions at C.R.S. 1963, 115-5-1(2). Such due process requirements are held to have been satisfied “if there is substantial evidence in the record to support a finding the certified utility is unwilling or unable to serve its certified area, and that public convenience and necessity require the change.” Fountain v. Public Utilities, supra.
PUBLIC SERVICE ARGUMENT I
Public Service first assigns error to the certification of areas designated Nos. 1 & 2 to Grand Valley. These areas constituted portions of the “Exclusive Grand Junction Area” certificated to Public Service in decision No. 27071. In its “Statement and Findings” the P.U.C. stated with reference to Area #1:
“Public Service has no lines or customers in this specific area, but does have lines and customers across the Colorado River in the southwesterly part of the section. *477 Grand Valley is presently rendering service to the north and east of this area. * * * Grand Valley is presently serving the area, although there is only one customer involved. In order to serve this one customer, Public Service would have to construct a mile or so of line over the Colorado River.”
With respect to Area #2 the P.U.C. stated as follows:
“Either utility could render service to the area from existing lines. Grand Valley, however, is not only presently the sole utility actually rendering service in this area, but it is also serving the North, West and South. * * * Grand Valley has 10 or 11 customers in this area, whereas Public Service has none.”
This language, while it may well reflect the feelings of the P.U.C. that Grand Valley can more easily serve the electric customers in the areas, is not sufficient to constitute a finding that Public Service is “unwilling or unable” to extend its existing lines. Therefore, we can only conclude that the due process requirements reviewed above were not met when the P.U.C. attempted to negate its previous certification to Public Service and to grant a certificate for areas 1 & 2 to Grand Valley. Accordingly, this portion of the decision is remanded to the P.U.C. for a determination of whether Public Service has indicated an unwillingness or inability to serve these areas, and if it has not, we order that these areas remain certificated to it.
PUBLIC SERVICE ARGUMENT II
We next discuss the allegation that it was error for the P.U.C. to certify certain portions of the previously non-exclusive “Grand Junction District” to Grand Valley.
In the case of Home Light, supra, this court set out the various categories used by the P.U.C. in awarding certificates of public convenience and necessity to areas where one or another utility is presently rendering service. The P.U.C. categories reviewed in Home Light may be summarized as follows:
(1) In the case of areas in which no utility has any *478 existing lines at all and no lines close enough to make immediate service practical, no certificate should be issued at all for the present time or until the area is built up to the point where certification can be made.
(2) In the case of areas where one utility has rendered service or has nearby lines, the area should be certificated to that utility.
(3) In the case of areas where the existing lines of more than one utility are in the area but where such lines do not actually cross or meet one another, the area should be divided to maintain the status quo.
(4) In cases where the area is divided between two or more utilities and where the lines are “hopelessly intermingled” the area is to be awarded to- the utility having the most existing service - in the area (the so-called “predominant utility”).
(5) Areas which were served almost exclusively by one utility, and yet were virtually completely surrounded by the lines of another utility (so-called “enclaves”) are to be certificated to the utility actually rendering service to the enclaves, with the surrounding territory certificated to the utility actually rendering service there. In respect to this latter classification, Home Light noted that “the decision to divide this territory so as to preserve these enclaves was a factual determination as to what would best serve the public interest in the areas, and we cannot say that the solution was an abuse of discretion.”
Although in general agreement with the method of awarding certificates utilized by the P.U.C. in Home Light, this court did, in fact, remand that decision for additional findings, holding that P.U.C. had not made an important prerequisite finding in granting the certificates. We therein said:
“This Court has held that where a utility not subject to regulation by the P.U.C. builds lines into an area which is already completely and adequately served by another utility, the intruding utility may not later, upon *479 becoming subject to regulation, claim the territory as its own. Public Serv. Co. v. Public Util. Comm’n, [142 Colo. 135, 350 P.2d 543 (1960), Cert. denied, 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50.] The P.U.C. evidently did not determine whether there were any areas which fall under the rule just stated. If there are areas which were already completely and adequately served (even though not certificated) by other utilities at the time Poudre Valley built its lines into such areas, then Poudre Valley should now be limited to serving its existing customers in such areas, in accord with Public Serv. Co. v. Public Util. Comm’n, supra. It is probable that there are some areas which fall into this category, but the actual delineation of such areas must be left to the P.U.C. In addition, there certainly will be some areas where lines are now intermingled, but which were * * not theretofore served by a public utility providing the same commodity or service, * * *’ C.R.S. 1963, 115-5-1(1), at the time when the lines were built. As to such areas, the P.U.C. correctly held that one utility may now be certificated to serve on an exclusive basis. The determination of which areas fall into this latter class must be left to the P.U.C.” Id.
In the instant case, a petition was filed by Grand Valley in 1963, and the decision rendered by P.U.C. in 1965 was well before our Home Light decision announced in 1967. The same deficiencies which we found in the findings of the P.U.C. in the Home Light decision are present in this case, and we deem the findings to be essential. Therefore, with the exception of two areas in the larger Grand Junction District, that portion of the decision in which the P.U.C. has attempted to certify Areas 10, 11 and 14 to Grand Valley must be remanded for a finding of whether or not the areas in question were being adequately served by Public Service at the time that Grand Valley brought its lines into the area.
In the two areas concerning which we affirm the certification made by the P.U.C., the evidence was that *480 Public Service is not serving any customers in the area, and therefore it cannot sustain a claim of having first served the area.
The first area we deal with is the one adjoining the City of Fruita, Colorado. The P.U.C. declined to enlarge the exclusive area previously certificated to Public Service, and awarded a certificate to Grand Valley to serve a 480 acre tract:
“This area is now completely served by Grand Valley. Grand Valley has over a mile of electric distribution lines in the portion of Section 16 sought by Public Service, and from such lines is presently serving in excess of 25 customers, several being located in the Monument View Subdivision. Grand Valley has in excess of a mile and a half of electric distribution lines in Sections 20 and 21, and serves a considerable number of customers from such lines. Grand Valley can readily furnish electric service from its existing lines to this entire area.” We conclude that this is category 2 territory and was properly certificated to Grand Valley.
The second area whose certification to Grand Valley is to be affirmed is a portion of the territory designated as #12 by the P.U.C. The portion of the award challenged by Public Service involves a division between it and Grand Valley along a road. Public Service has a distribution line along the road, while Grand Valley has constructed a parallel line approximately one-half mile to the north. Public Service presently serves no customers to the north of its line, while Grand Valley has several distribution points “dropping” below its line. We hold that the P.U.C. acted correctly when it awarded Public Service the entire area below its line, and in addition the right to serve up to one-eighth of a mile above such line. Grand Valley was certificated only that portion of the area in which Public Service has no customers. This territory is, generally speaking, category 3 and it was correct to maintain the status quo.
With respect to the other areas whose attempted cer *481 tification to Grand Valley is challenged by Public Service (Areas 10, 11 & 14), the decision is remanded with instructions to enter findings in accordance with Home Light, supra.
PUBLIC SERVICE ARGUMENT III
Public Service’s last assignment of error involves the exclusive right given to it in the 1946 decision No. 27071 to serve all customers whose estimated electric loads would exceed 100 kilowatts. The P.U.C., in the instant case, stated that while it would not any longer place any load restrictions upon Grand Valley, Public Service was not precluded from applying for authority to render electrical service to industrial loads which from time to time might develop in areas certificated to Grand Valley. The question of the effect to be given the certification to Public Service to service all loads over 100 kilowatts was previously before this court in Public Utilities v. Grand Valley, 167 Colo. 257, 447 P.2d 27 (1968), in which case we reiterated that “rights granted under a certificate of authority are property rights, [and] due process requires a full hearing if anything granted in the certificate is to be taken away.” As previously noted in Fountain, supra, due process requires a showing that the certificated utility is unwilling or unable to continue serving such large load customers, and in the absence of such a showing in the proceedings before the P.U.C., we hold that Public Service has a continuing right, under its 1946 certificate, to continue to serve both existing and new “large load” customers.
GRAND VALLEY ARGUMENT I
Grand Valley’s basic contention is that decision 27071 granted to it the rights of a public utility, so that it has certificated rights in the nonexclusive “Grand Junction District,” and therefore no areas in this district can be taken away from it without meeting the due process requirements set forth above. We find this argument to be without merit. Such non-exclusive *482 areas have been previously commented upon by this court:
“There is no place in the law of ‘regulated monopoly’ for the ‘non-exclusive’ areas set up by the P.U.C. in this case. As we have already indicated, the evidence shows that Western expanded into many of these so-called ‘non-exclusive’ areas at a time when it, and only it, had the statutory authority to expand into the areas as a public utility. Delta-Montrose expanded into the same areas at a time when it was still holding itself immune from state regulation, and Delta-Montrose thus acquired no protected territorial rights in these areas as a public utility.” Western Colo-Power, supra. (Latter emphasis added.)
In an apparent effort to avoid the possibility of future duplication of facilities the P.U.C., in its 1946 decision, attempted to call attention to such possible situations and strongly suggested to Public Service and Grand Valley that they attempt to avoid duplication wherever possible in the non-exclusive “Grand Junction District.” There was no certificate granted to Grand Valley, as indeed there could be none, it not becoming a public utility until the legislative act of 1961. This court has consistently held that the P.U.C. is the proper authority to interpret the effect of its certificates and decisions. See Grand Valley, supra; Westway Motor Freight, Inc. v. Public Utilities, 156 Colo. 508, 400 P.2d 444 (1965). The P.U.C. in the instant case never indicated in its decision No. 27071 that it regarded Grand Valley to be a public utility at that time or that it considered Grand Valley to be under its jurisdiction insofar as the granting of certificated rights is concerned.
GRAND VALLEY ARGUMENT II
Grand Valley also assigns error to the certification to Public Service of certain “enclave” areas. (Including the so-called West Grand Junction and Palisade enclaves.) These are areas which, although served predominantly by Grand Valley, were almost completely *483 surrounded by areas certificated to and served by Public Service. As indicated above, Home Light, supra (Category 5), the decision as to whether such enclaves should be preserved or not is a factual one as to what would best serve the needs of the public in the area. In the absence of a showing of an abuse of discretion by the P.U.C., we are unwilling to alter its decision with respect to such enclaves, and the certification to Public Service is affirmed.
The judgment of the district court is affirmed in part and reversed in part and the cause remanded to the district court with instructions to refer the matter back to the P.U.C. to amend its order and for further proceedings consonant with this opinion.
Mr. Chief Justice Pringle concurs in the result.