## No. 21456.

### The City of Thornton, Colorado *v.* The Public Utilities Commission, et al.

(402 P.2d 194)

Decided May 10, 1965. Rehearing denied June 1, 1965.

ORREL A. DANIEL, City Attorney, LEONARD H. MCCAIN, Assistant, EDWARD A. BROWN, Assistant, RAPHAEL J. MOSES, for petitioner.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT N. TRUNK, Assistant, for respondents The Public Utilities Commission of the State of Colorado, and the Individual Members Thereof.

BARRY and BOYLE, LEE, BRYANS, KELLY & STANSFIELD, BRYANT O'DONNELL, for Northwest Utilities Company, intervenor.

GLEN G. SAUNDERS, WILLARD S. SNYDER, FREDERICK T. HENRY, GERALD J. ASHBY, ARTHUR E. MARCH, JR., THOMAS A. RICHARDSON, NEIL C. KING, Amici Curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an original proceeding for writ of prohibition sought by the City of Thornton, as petitioner, and Northwest Utilities Company as intervenor, against the Public Utilities Commission to prohibit enforcement by that body of its decision No. 63596 purporting to set

aside and hold for naught a consummated sale of water and sewage facilities by Northwest Utilities Company to the City of Thornton.

We will refer to the City of Thornton as Thornton; to Northwest Utilities Company as Northwest; to the respondent Public Utilities Commission as the Commission.

Northwest is the holder of a variety of certificates of convenience and necessity authorizing it, as a public utility, to serve the water and sewage needs of a large area in the northwestern section of Adams County. At the time of acquisition by Northwest of an expanded authority to serve the City of Thornton there was presented to the Public Utilities Commission a franchise agreement between Northwest and Thornton. The franchise was incorporated in and made a part of the Commission's findings and order. Among the provisions was one that Thornton would have an option to purchase the system. This option was exercised by Thornton. A price was agreed upon and an election held by the citizens of Thornton authorizing the purchase and providing for a bond issue to finance it.

After the sale was consummated, Northwest applied to the Commission to surrender its certificates of authority on the ground that it had sold its water works and therefore did not have "any plant, property or assets of any kind or nature and was no longer rendering or able to render water and sewer services to its former customers."

The application of Northwest was set down for hearing before the Commission. At the time of the original setting, the Commission purported to outline certain issues which it said it intended to explore. Being apprehensive of the areas which it appeared the Commission might invade, Thornton instituted original proceedings for writ of prohibition in this court. (See *Thornton v. Public Utilities Commission,* 154 Colo. 431, 391 P.2d 374.) We held that action to be premature and discharged the

writ. The Commission thereupon reset the matter and proceeded to hear Northwest's application for surrender of its certificate. The order in that proceeding, which is the subject of this writ of prohibition, reads as follows:

"ORDER

"IT IS ORDERED:

"That the sale and transfer by Northwest of its water and sewer properties to the City of Thornton be, and the same hereby is, declared and held to be invalid and of no effect.

"That the surrender of its certificates of public convenience and necessity by Northwest be, and the same hereby is, disapproved and rejected.

"*That Northwest be, and it hereby is, ordered to repossess itself of its water and sewer properties as soon as possible and take all necessary action to so repossess itself.* (Emphasis added.)

"That Northwest be, and it hereby is, ordered to resume and continue service to all its customers as it has in the past, as soon as possible.

"That within ninety (90) days from the date of this Order, Northwest file with the Commission a full and complete report of what action it has taken, the reasons therefor, what progress has been made, and disclose any and all material and pertinent information.

"This Order shall become effective forthwith."

It is now apparent that it is impossible for Northwest to carry out the Commission's order, for to do so would directly involve Thornton and the facilities which it has acquired, the water and sewage system which it is operating, the bonds which it has issued, and the citizens it serves within and without the city. The apprehension of Thornton has now become a reality, notwithstanding the declaration of the Commission that "no municipally owned utilities are involved."

■ The Commission has taken the position that its jurisdiction over Northwest clothes its orders with legality. However, it is the completed contract of sale

between Thornton and Northwest — declared invalid by the Commission — which is the basis of the Commission's order. It is the exercise of jurisdiction over that subject matter which is challenged here. Since, for reasons that will be discussed, the sale is beyond the Commission's power to reach or review, the balance of the order purporting to keep Northwest in the water and sanitation utility field, despite knowledge that their facilities have long since been disposed of according to law, makes prohibition the only effective remedy in this situation.

■ Both by the Constitution of the State of Colorado and the pertinent statutes here involved, the Commission has no jurisdiction to invalidate or nullify the acquisition by Thornton of the water and sewage system previously owned and operated by Northwest. This seemed so elemental that in the previous Thornton case we were unwilling to assume that the Commission would attempt to assert such jurisdiction or to issue such orders as we have seen in the record. Mr. Justice Frantz, in his dissenting opinion, warned that the Commission was well launched on its "bootstrap" operation, but it was not so readily admitted then what so plainly can be seen now.

■ Notwithstanding the broad powers vested in the Commission by recent amendments to the constitution and by laws enacted by the legislature, there are certain definite and express prohibitions, both in the constitution and in the law, which originally effectively prevented the intrusion of the Commission into the matter of the sale by Northwest to Thornton. Furthermore, it likewise precludes any review of the transaction by that body subsequent to the sale. One of the constitutional provisions is Article V, section 35, which reads as follows:

"Delegation of power. — The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money,

property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

 By force of this article the legislature could not, by any law, vest in the Public Utilities Commission or any agency with like powers and duties jurisdiction to interfere with the municipal improvements such as the water and sewage facilities acquired by Thornton. We believe that it was with this fact in mind that the legislature, in enacting laws authorizing cities to acquire water works and pertinent facilities, effectively avoided conferring upon the Commission any jurisdiction over such acquisition. The one exception in C.R.S. '53, 115-5-4, gives the Commission, *when requested by a municipality,* limited jurisdiction to hold a hearing to determine the just compensation to be paid for the acquisition of such property if the parties are unable to agree upon a price. In this case, however, the price was negotiated, agreed upon and paid. Hence, the Commission's aid was not asked for or required.

 Consistent with Article V, and to be read in con-connection therewith, is Article XXV as follows:

"Public Utilities

"In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situate or operating within the State of Colorado, or whether within or without a home rule city or home rule town, as a public utility, as presently or as may hereafter be defined as a public utility by the laws of the State of Colorado, is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

"Until such time as the General Assembly may otherwise designate, said authority shall be vested in the

Public Utilities Commission of the State of Colorado; provided however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein *shall be construed to apply to municipally owned utilities.*" (Emphasis supplied.)

The exception provided for in this most recent amendment to the constitution needs no explanation or interpretation.

It would unduly lengthen this opinon to set out in full the various statutes pertaining to the acquisition by a city such as Thornton of the water system and appurtenances. The statutes involved are: 1960 Perm. Supp. C.R.S., section 139-32-1 (34); C.R.S. '53, 139-42-1; Chapter 139, Article 52, C.R.S. '53, as amended in 1962, now contained in C.R.S. 1963, 139-52-1 to 7.

In summary, they give full power to the municipality, subject only to the electorate, to *purchase* or acquire by condemnation *at the fair market value thereof* any water works or system and appurtenances necessary to the works or system. Such facilities may be wholly within or wholly without the municipality. The municipality is authorized to operate and maintain such water facilities or sewer facilities or both for its own use, for the use of public or private use, and for use within and without the territorial boundaries of the municipality. One section provides that the operation and the cost thereof shall be without modification, *supervision or regulation* of rates, fees, tolls or charges by any *board, agency,* bureau, commission or official other than the governing body as provided by ordinance in the municipality. A pertinent portion of C.R.S. 1963, 139-52-10, provides, "* * * In so far as the provisions of this article are inconsistent with the provisions of any other law, the provisions of this article shall be controlling."

A reading of the various pertinent statutes

points to the inescapable conclusion that the acquisition by Thornton of the Northwest facilities could not be prevented or interfered with by any agency once the people of Thornton determined by their vote that the system was to be acquired. By C.R.S. '53, 115-5-4, it was mandatory to include in the franchise granted to Northwest by Thornton the proviso that the municipality could acquire the public utility by purchase. Northwest was duty bound to sell, subject only to determination of the just price to be paid by negotiation or by arbitration or by a requested hearing before the Commission. As was previously stated, the price presented no obstacle so there was no need to invoke the aid of the Commission. Thornton, in acquiring the facilities, was by law required to pay its fair market value. This it determined by its own investigation and negotiation. Fair market value has many times been described as the price a buyer is willing to pay and the seller is willing to accept under circumstances that do not amount to coercion.

The only statute which the Commission has been able to cite in justification of its action is C.R.S. 1963, 115-5-5:

"Certificate may be sold, assigned, leased. — Any certificate of public convenience and necessity, or rights obtained under any such certificate held, owned, or obtained by any public utility, may be sold, assigned, or leased as other property, only upon authorization by the commission and upon such terms and conditions as the commission may prescribe."

If this section could be read to be in conflict with the other laws pertaining to acquisition by municipalities of water and sewage works, C.R.S. 1963, 139-52-10, would be controlling. However, in this action there has not been a sale, assignment or lease by Northwest of its certificates of authority. Thornton is given complete power to purchase and operate such facilities without a certificate of public convenience and necessity. Northwest still has its certificates and has not as-

signed them or sold them, and in its application before the Commission seeks only to surrender them. Under the circumstances disclosed herein the Commission has no discretion but to accept the surrender and to cancel the certificates.

The writ is made absolute.

MR. JUSTICE SCHAUER not participating.