Edwin R. Lundborg Edythe S. Miller Sanders G. Arnold The Public Utilities Commission of the State of Colorado Department of Regulatory Agencies State Services Building 1525 Sherman Street Denver, Colorado 80203
Dear Commissioners:
QUESTION PRESENTED AND CONCLUSION
I am writing in response to your written inquiry of August 26, 1977 concerning whether certain staff work papers are public records subject to disclosure pursuant to the requirements of Article 72, Title 24, C.R.S. 1973.
My conclusion is "yes."
ANALYSIS
For the purposes of rendering this opinion, I have reviewed the staff work papers which are requested to be made public. They consist of several pages listing issues to be decided and the dollar amounts for each item, as well as calculation of revenue requirements using two alternative methods. I am further informed that the substance, if not the very detail, of the information contained in these work papers was raised and discussed during the public hearings held before the Commission on August 22 and August 25, 1977.
In order to adequately respond to your inquiry, the following subsidiary issues must be discussed and decided:
1. Does Article 72, Title 24, C.R.S. 1973, apply to records made or maintained by the Commission?
2. If Article 72 applies to the records of the Commission, do the work papers in question constitute "public records" within the meaning of C.R.S. 1973, 24-72-202(6) and (7)?
3. If the work papers constitute "public records," does any statutory authority exist upon which to deny inspection thereof to any member of the public?
4. Assuming the working papers are subject to public access pursuant to C.R.S. 1973, 24-72-203, would the protective order provision of C.R.S. 1973, 24-72-204(6) apply to this fact situation?
Based upon the analysis below, I conclude that each of Issues 1, 2 and 3 must be answered in the affirmative. I specifically conclude that the provisions of Article 72 apply to the Commission; that the work papers in question do constitute "public records" as defined by sections 24-72-202(6) and (7) and that no statutory authority exists upon which the Commission could properly base a denial of the public's right to inspect the work papers in question. Additionally, upon these facts, it is highly improbable that disclosure would cause substantial injury to the public interest; thus, with respect to Issue 4, a protective order could not be obtained.
1. Does Article 72, Title 24 C.R.S. 1973, Apply to theRecords Made or Maintained By the Commission?
One may suggest that since the Public Utilities Commission derives some of its regulatory authority from the Colorado Constitution (Article XXV), the case of Associated Studentsof University of Colorado v. Regents of Univ.,189 Colo. 482, 543 P.2d 59 (1975), may have some application to this issue. In the Regents case, the Colorado Supreme Court held the Open Meetings Law (C.R.S. 1973, 24-6-402) inapplicable to the Board of Regents of the University of Colorado. The Court reasoned therein that the special constitutional and statutory authority provided the Regents to exercise ". . . the general supervision of (the university) . . ." (Colo. Constitution, Article VIII, Section 5) and to ". . . enact laws for the government of the university" (C.R.S. 1973, 23-20-112) empowered the Regents to enact laws limiting the application of general legislation, such as the Open Meetings Law. Here, however, the constitutional grant of authority to the Public Utilities Commission was solely ". . . to regulate the facilities, service, and rates and charges therefor . . ." until the General Assembly designates another agency to do so. (Article XXV, Colo. Constitution.)
In a recent case the Colorado Supreme Court has quite clearly indicated that the authority of the Public Utilities Commission may be limited by other state laws. In K.C. Electric Ass'nInc. v. Public Utilities Commission,191 Colo. 96, 550 P.2d 871 at 872 (1976), the Court stated, interalia:
 If (the Public Service Company) had no right to enter into such a contract with the City, the PUC order would have the effect of approving action by (Public Service Company) which was contrary to law. It is axiomatic that the PUC does not have authority to issue orders which either on their face or in their operation constitute violations of the laws of this State." (Emphasis added.)
See also, Thornton v. P.U.C., 157 Colo. 188,402 P.2d 194 (1965) discussing other statutory limitations on the Commission's authority.
Based upon the foregoing authorities, I find insufficient support for the proposition that the Commission is exempt from the operation of the open records provisions of Article 72. Therefore, I must conclude that, if otherwise applicable, Article 72 must govern the Commission's conduct with respect to its records.
2. Do the Work Papers in Question Constitute "publicrecords" Within the Meaning of C.R.S. 1973, 24-72-202(6)and (7)?
A "public record" includes ". . . all writings made, maintained, or kept by the state or any agency . . . thereof for use in the exercise of functions required or authorized by law . . . ." C.R.S. 1973, 24-72-202(6). The term "writings" is further defined by section 24-72-202(7) to include ". . . all papers . . . or other documentary materials, regardless ofphysical form or characteristics." (Emphasis added.)
An abundance of relevant legislative history is provided in the Colorado Legislative Council's Report to the Colorado General Assembly entitled "Open Public Records for Colorado," Research Publication No. 126 dated November, 1967 (hereinafter referred to as the "Report"). This Report describes, in depth, the legislative efforts surrounding the adoption of Article 72. The Legislative Council's Committee on Open Public Records conducted a one-year study of several aspects of the open records question and made various legislative recommendations. At pages xiii and xiv of the Report, the Committee discussed the breadth of meaning it intended by the terms "public records" and "writings" as follows:
 The definition of "public records" is especially important because it determines the general reach of the bill. The committee has chosen to define the term very broadly so that it covers all writings . . . of public agencies . . . . This definition is in keeping with the general concept of freedom of information. It is in contrast to some definitions in which public records are restricted to such items as formal records of completed transactions and records required by law to be kept.
 The term "writings" is defined to include papers . . . or other documentary materials, regardless of physical form or characteristics. This is intended to cover all things that could possibly be considered records of an agency. Nothing is to be excluded on the ground that it does not fit the historical description of a written record. (Emphasis supplied.)
Based upon the foregoing, I am of the firm opinion that the work papers in question, having been prepared by Commission staff from the record of the public hearings and having been considered by the Commission in its decision-making process, constitute public records within the meaning of sections 24-72-202(6) and 202(7),supra.
3. Does Any Statutory Authority Exist for the Denial ofthe Public's Right to Inspect these PublicRecords?
C.R.S. 1973, 24-72-201 declares the legislative policy concerning these issues to be as follows:
 It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law.
C.R.S. 1973, 24-72-203(1) provides the substantive duties of maintaining open records as follows:
 All public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise provided by law, but the official custodian of any public records may make such rules and regulations with reference to the inspection of such records as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office.[1]
In Denver Pub. Co. v. Dreyfus, 184 Colo. 288, 520 P.2d 104
(1974), the Colorado Supreme Court construed section 201 to prohibit the creation of any exception to disclosure by implication. Thus, it appears the Court would require a specific statutory limitation to the Open Records Act to create such an exception. A review of the statutory provisions relating to the creation, powers, and duties of the Public Utilities Commission contained in Title 40, C.R.S. 1973, reveals neither a general, nor a specific statutory limitation upon the Commission's duties pursuant to Article 72.
Therefore, one must analyze the statutory grounds for the denial of inspection contained in C.R.S. 1973, 24-72-204 to determine whether the legislature has authorized the withholding of this type of record from public disclosure.
Prior to its enactment of Article 72, the General Assembly had before it the provisions of the Freedom of Information Act, Public Law 89-487 (Title 5 U.S.C. § 552). This Act included an express exemption from public disclosure for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ." (See pages 8-10 of the Report.) The Colorado General Assembly failed to include this exemption in Article 72 and I can only assume such omission was intentional. I find no exemption contained in section 24-72-204 applicable to the work papers herein.[2]
I must conclude from the analysis above that the work papers do not fall within any statutory exemption provided by section24-72-204.
4. Under these Circumstances, Would the Protective OrderProvisions of C.R.S. 1973, 24-72-204(6) Apply?
C.R.S. 1973, 24-72-204(6) provides in pertinent part:
 If, in the opinion of the official custodian of any public record, disclosure of the contents of said record would do substantial injury to the public interest, notwithstanding the fact that said record might otherwise be available to public inspection, he may apply to the district court . . . for an order permitting him to restrict disclosure . . . . After hearing, the court may issue such an order upon a finding that disclosure would cause substantial injury to the public interest. In such action the burden of proof shall be upon the custodian. (Emphasis added.)
Since all of the material contained in the work papers was the subject of testimony and discussion during the Commission's public hearings, it is highly improbable the court would find that the disclosure of the same material, in its written format, would cause substantial injury to the public interest. Under such factual circumstances, I strongly urge the Commission to forego such an application to the Court; but await being presented with circumstances in which the Court could possibly be persuaded that non-disclosure is necessary to protect the public interest against substantial injury. In my judgment, this is not such a case.
With regard to any other questions raised by your letter of August 26 — such as whether notes taken by the Commissioners are subject to the Open Records Act — I would prefer to answer such questions when, and if, they actually arise. The practice of not opining on hypothetical questions has been long-standing with this office. Too often, the actual facts presented vary enough from a related hypothetical question and require differing legal approaches and analyses. This opinion, therefore, is limited solely to the facts presented to me as related above.
SUMMARY
Staff work papers, developed during a utility rate hearing from information in the record and which listed issues, dollar amounts for each item, and two alternate methods of calculating revenue requirements, do constitute public records within the meaning of C.R.S. 1973, 24-72-202(6) and (7). Such work papers do not fall within any statutory exemption under C.R.S. 1973, 24-72-204. The protective order provisions of C.R.S. 1973, 24-72-204(6) do not apply.
Very truly yours,
 J.D. MacFARLANE Attorney General
OPEN RECORDS PUBLIC UTILITIES
C.R.S. 1973, 24-72-201
C.R.S. 1973, 24-72-202(6) and (7) C.R.S. 1973, 24-72-203(1)
Colo. Const. art. XXV
REGULATORY AGENCIES, DEPT. Public Utilities Comm.
Staff work papers, developed during a utility rate hearing from information in the record and which listed issues, dollar amounts for each item, and two alternate methods of calculating revenue requirements, do constitute public records within the meaning of C.R.S. 1973, 24-72-202(6) and (7). Such work papers do not fall within any statutory exemption under C.R.S. 1973, 24-72-204. The protective order provisions of C.R.S. 1973, 24-72-204(6) do not apply.
[1] No Commission rule or regulation exists which would specifically authorize the Commission to withhold from public view the work papers in question. I suggest that the adoption of any such rule prohibiting disclosure would violate the clear legislative intent of the General Assembly. In this regard, the Legislative Council's Report states at p. xv the following:
 State regulations have not been included among the grounds for denial of access. To permit State administrative agencies to make regulations denying access to public records would be to defeat the purpose of this bill. (Emphasis supplied.)
[2] In any event, several recent federal cases construing the inter or intra-agency memorandum exemption have even required disclosure of factual information contained in the memoranda, as distinguished from deliberative or policy-making processes.See Environmental Protection Agency v. Mink,410 U.S. 73 (1973) and cases cited therein. Thus, to the extent the work papers reflect solely investigative or factual data, they would most likely be subject to disclosure, even had Colorado adopted the "intra-agency memorandum" exemption.