## MAYOR AND CITY COUNCIL OF CUMBERLAND *v.* POWLES ET UX.

[No. 98, September Term, 1969.]

*Decided November 11, 1969.*

The cause was submitted on brief to HAMMOND, C. J., BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

Submitted by *J. Frederick Sharer* for appellant.

No brief filed on behalf of appellees.

HAMMOND, C. J. delivered the opinion of the Court.

The City of Cumberland appeals from an order of the Circuit Court for Allegany County requiring it to furnish water in the suburb of LaVale beyond the City limits to a householder, many of whose neighbors it has long served. The Maryland law on the subject is fully set out in *Bair v. City of Westminster,* 243 Md. 494, and Judge Getty found on the facts before him, permissibly and justifiably we think, that the controlling law required the City not to discriminate against the appellee. We adopt Judge Getty's opinion as that of this Court in this appeal, as follows:

"This is a Petition for a Writ of Mandamus ordering the Mayor and City Council of Cumberland to permit a water tap to the Petitioner herein for Lot No. 7 in Lucas Heights sub-division, LaVale, Maryland. The case was submitted by counsel for the Petitioner and for the

Mayor and City Council of Cumberland on an agreed stipulation of facts. The pertinent provisions being as follows:

"Under an agreement entered into between the Mayor and City Council of Cumberland and the LaVale Sanitary Commission dated January 9, 1950, the LaVale Sanitary Commission purchases water from the city of Cumberland's water system for residents of LaVale. This constitutes the principal source of supply for La-Vale, the average daily consumption being 600,000 gallons. Water is presently being provided to 17 of the 22 lots in Lucas Heights sub-division.

"Under the terms of the agreement, the LaVale Sanitary Commission has the right to sell and supply water unto its inhabitants subject to prepayment of a Fifty Dollar ($50.00) fee for each tap. Paragraph 7 limits the right of the Commission to sell water for domestic use only, unless the city of Cumberland consents to other usage. The city has the right to lessen or abate altogether the supply of water furnished whenever, in the judgment of the city, it shall be necessary. This discretionary power is not to be exercised in an arbitrary or unreasonable manner.

"The letter to the LaVale Sanitary Commission from the Commissioner of Water dated July 10, 1968, states that the only alternative to a third water supply for Cumberland is a reduction in the number of customers served. The decision of the Mayor and City Council to restrict any further water taps outside the corporate limits in the opinion of the Court, however, will not necessarily reduce the number of customers served. The resolution adopted by the Mayor and City Council states that the water supply of the city of Cumberland is adequate to meet the current needs of the citizens of Cumberland, and the only alternative to constructing a third water supply is a halt in the increase of customers served by the system. This resolution gives the Commissioner of Water the right to carry out the prohibition in whatever

manner he deems necessary. This resolution is dated July 15, 1968, which is five (5) days after the notice from the city to the LaVale Sanitary Commission limiting the new water taps to nonresidents.

"The Commissioner of Water testified that subsequent to the letter of July 10, 1968, to the LaVale Sanitary Commission, ten water taps were granted to residents outside the city limits of Cumberland. These were characterized as special exceptions. Several involved permits that had been issued prior to July 15, 1968, two cases where drilled wells did not work, several where outside taps were paid for, but not installed before July 15, 1968, and several hardship conditions of contamination of existing water supply.

"The average daily consumption of water produced by the Cumberland system was 11,769,000 gallons in 1956 and was 13,078,000 gallons in 1968. 69.5% of the water produced is used for industrial purposes. The capacity of Lake Gordon is 1.4 billion gallons and the capacity of Lake Koon is 2.43 billion making a total capacity of 3.83 billion gallons of water. On May 1 of each year during the past 12 years, the water has flowed over the spillway of each of these two impoundments. On July 15, 1968, when the Order was issued to curtail outside taps, there was a 276 day supply of water on hand. For the week ending February 10, 1969, there was a 179 day supply. The City Engineer attributes the difference to the lack of rain and not increased consumption.

"In 1966 Whitman, Requardt and Associates prepared an engineering study for the Mayor and City Council of Cumberland concerned with developing a water service area for the city of Cumberland. The report considers a design period of 34 years to the year 2000. The estimated demand of the area at or before the year 2000 is 26 million gallons a day and the safe yield of the present system is 18 million gallons a day. The projected population of the area in 2000 is 66,000 people. This report indicates that the projected demand will probably exceed the safe yield sometime between 1970 and 1979. This pro-

jection was made in 1966. It is apparent that the action of the Mayor and City Council in limiting taps to domestic customers will not produce the desired result. The average daily consumption for domestic use is 250 gallons per day and the curtailing of these taps will not alleviate the requirement of a third source of water supply. The city of Cumberland will require a third source of water supply to meet its projected needs irrespective of the granting or refusal to grant water taps for domestic use in areas presently being served by the system. This is clearly borne out by the engineering report submitted in evidence.

"Clearly a city cannot generally be compelled to supply water in an area outside its limits where it has not hitherto supplied water to such area at all. Likewise, a city cannot be compelled to supply water to anyone outside its limits even if it is already engaged in doing so where it has made limited and special contracts to do so with particular parties and has not placed itself by contract or conduct in the position of a public utility. *Milwaukee v. Public Service Commission,* 66 N.W.2d 716. It has been further held that a privately owned water company cannot be required to extend its system into an area it had not previously served when it is shown that it would be ·economically unsound for it to do so. *Public Service Commission v. Brooklyn & Curtis Bay Light and Water Co.,* 122 Md. 612. *Schriver v. Mayor and City Council of Cumberland,* 169 Md. 286.

"The law of Maryland is succinctly set forth in *Bair v. City of Westminster,* 243 Md. 494 stating that regardless ·of what it may be elsewhere, the rule in this State is that where a municipality has undertaken to supply water to an area outside its corporate limits, it must furnish water impartially to all those reasonably within reach of its supply system. In *Lewis v. Mayor and City Council of Cumberland,* 189 Md. 58 argued in the Court of Appeals by the late D. Linley Sloan, former Chief Judge of the Maryland Court of Appeals and Charles Z. Heskett, City Attorney for Cumberland, two recognized

and revered giants of the legal profession in Maryland, the Court of Appeals stated, 'It is axiomatic that a public service corporation, private or municipal, is under a duty to furnish to all persons applying therefor the service which it offers without discrimination and at reasonable rates where the service requested is within the reasonable range of its plant, equipment, lines or mains. * * * Where the service or utility is supplied by a municipality, it has been said that while the purpose must be public and the utility must be impressed with a public interest, nevertheless the municipality acts in its business or proprietary rather than its governmental character, * * *, and that is especially true where the service is supplied beyond the territorial limits of the municipality, * * *.'

"The city is not authorized to make individual determinations on the granting or refusal to grant water taps and while motivated by the best intention, they cannot be permitted to pick or choose as they have done since the ban of July 15, 1968. The contract entered into is not limited, but is intended to include all of the residents served by the LaVale Sanitary Commission. There is no present water shortage or financial crisis that would justify the action taken by the Mayor and City Council regarding the granting of water taps for domestic use in areas presently served by the system. Having contracted to supply water to areas outside its corporate limits, the city must furnish water impartially to all those reasonably within reach of its system. Their action in denying the issuance of a water tap to the Plaintiff herein is arbitrary and unreasonable and cannot be sustained. Unless there are particular circumstances distinguishing the other 15 or 20 applicants who have been denied water taps, the same reasoning would apply. This should preclude any requirement that other persons similarly situated be required to file individual suits to obtain water service."

*Order affirmed, with costs.*