### No. 26720

**Lawrence B. Robinson and The Chesapeake Bay Company, a Colorado corporation v. The City of Boulder, a Colorado municipal corporation**

(547 P.2d 228)

Decided March 15, 1976. Rehearing denied April 5, 1976.

358

Guy A. Hollenbeck, for plaintiffs-appellees.

Walter L. Wagenhals, City Attorney, Kirk Wickersham, Jr., Assistant, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal brought by appellant, City of Boulder (Boulder), seeking reversal of a trial court order mandating its extension of water and sewer service to appellees. We affirm.

Appellees (landowners) sought to subdivide approximately 79 acres of land in the Gunbarrel Hill area northeast of Boulder and outside of its city limits. The landowners proposed a residential development in conformity with its county rural residential (RR) zoning.

As a condition precedent to considering the question of development, the county required the landowners to secure water and sewer services; they were referred to the city for that purpose.

Boulder operates a water and sewer utility system. In the mid 1960's it defined an area beyond its corporate limits, including the subject property, for which it intended to be the only water and sewer servicing agency. The record reflects that this was accomplished in order to gain indirect control over the development of property located within the service area. Boulder contracted with and provided water and sewer service to the Boulder Valley Water and Sanitation District[1] (the district), which is located within the service area. The subject property is immediately adja-

---

[1] The district has never been a party to this action. Neither landowners, Boulder nor the district itself has ever taken any action to make it such.

cent to the district. The contract between Boulder and the district vests in the former almost total control over water and sewer service within district boundaries. The latter functions in merely a nominal administrative capacity. For example, Boulder retains control over all engineering and construction aspects of the service as well as decision-making power over the district's authority to expand its boundaries. Pursuant to a city ordinance, the district cannot increase its service area without the approval of city council.

The landowners applied to the district for inclusion, and the application was accepted; however, Boulder disapproved the action on the grounds that the landowners' proposal was inconsistent with the Boulder Valley Comprehensive Plan and various aspects of the city's interim growth policy. The trial court found that:

". . . The City seeks to effect its growth rate regulation goals in the Gunbarrel Hill area by using its water and sewer utility as the means to accomplish its goals. . . ."

The decision was *not* based on Boulder's incapacity to supply the service or the property's remote location from existing facilities or any economic considerations.

The landowners then filed suit for declaratory relief, and the district court concluded that Boulder is operating in the capacity of a public utility in the Gunbarrel area. In terms of supplying water and sewer services, it must treat all members of the public within its franchise area alike — including these landowners. The court held that Boulder had unjustly discriminated against appellees by denying them service, while having previously approved service extensions to neighboring residential and industrial developments. The court concluded that Boulder can only refuse to extend its service to landowners for utility-related reasons. Growth control and land use planning considerations do not suffice. We agree.

## I.

On appeal Boulder argues that its service program in Gunbarrel is not a public utility under the test which we enunciated in *City of Englewood v. Denver*, 123 Colo. 290, 229 P.2d 667 (1951):

". . . to fall into the class of public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity. The nature of the service must be such that all members of the public have an enforceable right to demand it. . . ."

Boulder contends that it has never held itself out as being ready to serve all members of the public to the extent of its capacity. The trial court made findings to the contrary and the record amply supports them. We summarize them:

(1) Boulder's extension of services to the Gunbarrel area created a new and major urban service area substantially distant from the city's corporate limits.

(2) Boulder entered into agreements with other local water and sanitation districts and municipalities which had the effect of precluding these entities from servicing Gunbarrel residents.

(3) Boulder opposed a water company's application before the Public Utilities Commission which would have provided water in a part of the city's delineated service area.

(4) Boulder's total control and dominance as the exclusive water and sewer servicing agency in the Gunbarrel area is demonstrated by the fact that Boulder County planning authorities, routinely and in compliance with the city's agreement, refer area landowners in need of such services to Boulder.

(5) The course of conduct followed by Boulder in providing water and sewer services to this area indicates that *it has held itself out to be the one and only such servicing agency* in the Gunbarrel area.

In light of such findings, the trial court's determination that Boulder had by its actions acceded to the status of a public utility in the Gunbarrel area was correct.

Boulder relies on *City of Englewood, supra*, to support its position that it is not operating as a public utility within the area in question; that reliance is misplaced. The determination that Denver did not operate as a public utility in supplying Englewood with water was premised on an entirely different factual background. Denver's supplying of water to Englewood users was wholly incidental to the operation of its water system which was established for the purpose of supplying Denver inhabitants. Denver did not "stake out" a territory in Englewood and seek to become the sole supplier of water in the territory. Here, by agreements with other suppliers to the effect that the latter would not service the Gunbarrel area and by opposing other methods or sources of supply, Boulder has secured a monopoly over area water and sewer utilities. Further, as the trial court pointed out:

". . . The City of Boulder had dedicated its water and sewer service to public use to benefit both the inhabitants of Boulder and the residents of the Gunbarrel Hill area in the interest of controlling the growth of the area and to provide living qualities which the City deems desirable. . . ."

II.

Boulder argues that even if its program satisfies the tests of a public utility in the Gunbarrel area that it may use public policy considerations in administering its service program. It contends that the rules which apply to private utilities should not apply to a governmental utility authorized to implement governmental objectives, one of which is the adoption of a master plan of development.

Section 31-23-106(1), C.R.S. 1973,[2] in relevant part, states:

"*Master plan*. (1) It is the duty of the municipal planning commission to make and adopt a master plan for the physical development of the municipality, including any areas outside of its boundaries, *subject to the approval of the legislative or governing body having jurisdiction thereof*, which in the commission's judgment, bear relation to the planning of such municipality. Such plan, with the accompanying maps, plats, charts, and descriptive matter, shall show the commission's recommendations for the development of said territory including, among other things:

. . . .

"(b) The general location and extent of *public utilities* and terminals, whether publicly or privately owned or operated, *for water*, light, *sanitation*, transportation, communication, power, and other purposes;

"(c) The removal, relocation, widening, narrowing, vacating, abandonment, change of use, or extension of any of the ways, grounds, open spaces, buildings, property, *utility*, or terminals referred to in paragraphs (a) and (b) of this subsection (1); . . ." (Emphasis added.)

To this end, the city of Boulder and Boulder County jointly developed and adopted the Boulder Valley Comprehensive Plan, one of the purposes of which is to provide a basis for the discretionary land use decisions which it must make. Boulder also cites section 31-23-109, C.R.S. 1973,[3] which states in relevant part:

"*Legal status of official plan*. When the municipal planning commission has adopted the master plan of the municipality or of one or more major sections or districts thereof, no street, square, park or other public way, ground or open space, or public building or structure, or *publicly* or privately *owned public utility* shall be constructed or authorized in the municipality or in such planned section and district until the location, character, and extent thereof has been submitted for approval by the commission. In case of disapproval, the commission shall communicate its reasons to the council, which has the power to overrule such disapproval by a recorded vote of not less than two-thirds of its entire membership. If the public way, ground space, building, structure, or utility is one the authorization or financing of which does not, under the law or charter provisions governing the same, fall within the province of the municipal council, then the submission to the planning commission shall be by the board, commission, or body having jurisdiction, and the planning commission's disapproval may be overruled by said board, commission, or body by a vote of not less than two-thirds of its membership. The failure of the commission to act within sixty days from and after the date of official submis-

---

[2] Now Colo. Sess. Laws 1975, ch. 275, 31-23-206(1) at 1147.
[3] Now Colo. Sess. Laws 1975, ch. 275, 31-23-209 at 1148.

sion to it shall be deemed approval." (Emphasis added.)

Boulder argues that its decision to deny the extension of services to the landowners in this case was based on the proposed development's non-compliance with growth projections outlined in the comprehensive plan. In the event of an alleged conflict between Boulder's public utility and land use planning duties we are asked to rule that the latter are paramount.

A municipality is without jurisdiction over territory outside its municipal limits in the absence of legislation. *See Pueblo v. Flanders*, 122 Colo. 571, 225 P.2d 832 (1950). We find nothing in the above-cited statutes which indicates a legislative intent to broaden a city's authority in a case such as the one before us. In our view, sections 31-23-106(1) and 31-23-109 place ultimate governmental authority in matters pertaining to land use in unincorporated areas in the county.[4] In effect, a city is given only an advisory role.

The record reflects that the proposed development would comply with county zoning regulations; and the county planning staff has indicated that it conforms with their interpretation of the comprehensive plan, though final consideration was put off pending a determination of whether the area would have adequate water and sewer facilities.

In view of the fact that it is the board of county commissioners — not Boulder — which must make the ultimate decision as to the approval or disapproval of the proposed development, we do not need to address the question of whether the Boulder Valley Comprehensive Plan relieves the City of Boulder of its duty to the public in its proprietary role as a public utility.

In conclusion, we hold that inasmuch as Boulder is the sole and exclusive provider of water and sewer services in the area surrounding the subject property, it is a public utility. As such, it holds itself out as ready and able to serve those in the territory who require the service. There is no utility related reason, such as insufficient water, preventing it from extending these services to the landowners. Unless such reasons exist, Boulder cannot refuse to serve the people in the subject area. *Mayor and Council of City of Dover v. Delmarva Enterprises, Inc.*, 301 A.2d 276 (Del. Supr. 1973); *Delmarva Enterprises, Inc. v. Mayor and Council of City of Dover*, 282 A.2d 601 (Del. Supr. 1971); *Mayor and City Council of Cumberland v. Powles*, 255 Md. 574, 258 A.2d 410 (1969).

Judgment affirmed.

---

[4] In this case, landowners' proposal is tabled before the county planning commission pending a determination of whether water and sewer utilities will be available.