## No. 26855

**K. C. Electric Association, Inc. v. The Public Utilities Commission of the State of Colorado; Howard S. Bjelland, Edwin R. Lundborg, and Henry Zarlengo as the Members thereof; Public Service Company of Colorado; The City of Burlington, Colorado; and Tri-State Generation and Transmission Association, Inc.**

(550 P.2d 871)

Decided June 7, 1976.

Richard D. Thomas, John P. Thompson, for plaintiff-appellant.

Kelly, Stansfield & O'Donnell, Donald D. Cawelti, for Public Service Company of Colorado.

John C. Penny, for City of Burlington, Colorado.

Raphael J. Moses, John J. Conway, for Tri-State Generation and Transmission Association, Inc.

Carroll, Bradley & Ciancio, John S. Carroll, for Colorado Rural Electric Association, amicus curiae.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

This case presents the question of whether the Public Utilities Commission (PUC) has the authority to direct a home rule city to purchase its wholesale electric power requirements from one public utility company rather than another.

The home rule city of Burlington, Colorado (City) has for many years generated and distributed electric energy to its residents. Due to insufficient capacity and a rapid rise in fuel costs, the City recently determined to cease generating power and to purchase instead the City's power requirements at wholesale. The City would then utilize its existing distribution network to deliver power to its retail customers.

The City solicited bids from Plaintiff-Appellant K. C. Electric Co. (K. C. Electric) and from Defendant-Appellee Public Service Company of Colorado (P. S. Co.), for the purpose of contracting for its wholesale electric power requirements. Eventually, the City entered into a contract with P. S. Co.

The City-P. S. Co. contract was contingent upon P. S. Co.'s entering into suitable arrangements with Tri-State Generation and Transmission Association, Inc. (Tri-State) for transmission of the P. S. Co. power to a point near the City limits. Tri-State refused to enter into such an agreement, claiming that it had insufficient transmission capacity to carry or "wheel" the P. S. Co. power. Meanwhile, although it had no contract with the City, K. D. Electric, believing it had an exclusive right to serve the City because its certificated territory completely surrounds the City, sought transmission rights from Tri-State which were identical to those sought by P. S. Co. This request was granted by Tri-State.

P. S. Co. then filed a complaint with the PUC against Tri-State seeking an order compelling Tri-State to "wheel" the power for P. S. Co. so that it could carry out its contracted obligation with the City. K. C. Electric, stating that its rights would be affected by the proceeding, sought and was granted leave to intervene by the PUC.

The hearing examiner issued a Recommended Decision granting the relief sought by P. S. Co. Exceptions to the Recommended Decision were overruled by the PUC. On appeal, the district court affirmed the PUC order. K. C. Electric now brings the case here on appeal.

## I.

■ The propriety of the PUC decision which ordered Tri-State to wheel power for P. S. Co. necessarily turns on whether the contract between P. S. Co. and the City was valid. If P. S. Co. had no right to enter into such a contract with the City, the PUC order would have the effect of approving action by P. S. Co. which was contrary to law. It is axiomatic that the PUC does not have authority to issue orders which either on their face or in their operation constitute violations of the laws of this State.

None of the parties to this case contests the general power of the PUC to require one public utility to make its transmission facilities available to another utility in order to prevent duplication of facilities. *See* section 40-5-101, *et seq.*, C.R.S. 1973.

K. C. Electric does contest the specific order of the PUC which requires Tri-State to wheel power for P. S. Co. K. C. Electric's challenge to the order is based on the proposition that P. S. Co. had no right to enter into its contract with the City.

## II.

■ The central question in this case is as follows: Does the PUC have the authority to direct a home rule city to purchase its wholesale electric power requirements from one rather than another public utility company?

P. S. Co. relies upon the Colorado Constitution to reach a negative answer to the question; K. C. Electric argues that Article V, Section 35 and Article XXV of the Colorado Constitution do not control this case and that the policy of regulated monopoly applicable to electric utilities entitles K. C. Electric to exclusively serve the City of Burlington. We agree with the position taken by the P. S. Co.

## A.

Article V, section 35 of the Colorado Constitution provides:
"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

Article XXV of the Colorado Constitution provides that:
"In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor within home rule cities and home rule towns of every corporation, individual, or association of individuals, wheresoever situate or operating

within the State of Colorado, whether within or without a home rule city or home rule town, as a public utility, as presently or as may hereafter be defined as a public utility by the laws of the State of Colorado is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

"Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; provided, however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein shall be construed to apply to municipally owned utilities."

The City of Burlington was a municipally owned utility operating wholly within the municipal boundaries prior to its decision to purchase its wholesale electric requirements from an outside source. The City will continue to distribute electricity at retail to its residents, just as it has done for years. To this extent, at least, the City remains a municipally owned utility. There is, of course, no requirement that a company engage in every stage of the manufacturing and distribution process in order to achieve the position of a utility; indeed, many if not most of the electric utility companies in Colorado do not generate their own power. The question thus presented is whether the City of Burlington is a municipally owned utility with respect to its wholesale purchase of electricity from outside the City. If it is a municipally owned utility for that purpose, Article XXV prohibits the PUC from exercising any control over the purchase transaction.

In *City of Thornton v. PUC*, 157 Colo. 188, 402 P.2d 194 (1965), this court held that the PUC was without jurisdiction to interfere with Thornton's purchase of a water and sewer system from a public utility company. The court relied upon the "improvements" clause of Article V, section 35 and the "municipally owned utilities" clause of Article XXV. P. S. Co. contends that the City of Thornton case controls the instant case and requires affirmance of the PUC and district court decisions.

The case of *City and County of Denver v. PUC*, 181 Colo. 38, 507 P.2d 871 (1973), is urged upon us by K. C. Electric as dispositive authority for their position. There, Denver contended that the PUC had no jurisdiction over the Denver bus system even if some bus lines operated outside the Denver city limits. For this proposition, Denver relied upon the municipally owned utilities clause of Article XXV. We concluded that while Denver had complete, exclusive control over operations of its bus system within the City and County of Denver, once the busses crossed the municipal borders, the PUC could exercise jurisdiction. *Accord*: *City of Lamar v. Town of Wiley*, 80 Colo. 18, 248 P. 1009 (1926).

*City and County of Denver v. PUC, supra*, states the law applicable when a municipally owned utility seeks to provide utility service to consumers outside the municipal borders. The case does not, however,

speak directly to the situation which obtains in the instant case.

The rationale of Article XXV and *City and County of Denver v. PUC, supra*, is that when a municipally owned utility operates within the municipality, there is no one who needs the protections of the PUC. The electorate of the City exercises ultimate power and control over the City-run utility and if the people of the City are in any way dissatisfied with the operation of the utility, they may demonstrate their discontents at the next municipal election.

When a municipally owned utility provides utility service outside the municipality, those receiving the service do not have a similar recourse on election day. They have no effective way of avoiding the possible whims and excesses of the municipality in the absence of state regulation by the PUC.

In contrast to *City and County of Denver v. PUC, supra*, the City here was not concerned with supplying anyone other than their own citizens. In purchasing power, it was acting strictly as a municipally owned utility for the benefit of its own residents. Under such circumstances, the PUC had no jurisdiction to require the City to purchase its power from any particular utility, and acted properly in refusing to do so. The resolution of this question in this manner makes immaterial the other points raised by the parties.

The judgment is affirmed.