## No. 27444

**City of Loveland v. The Public Utilities Commission of the State of Colorado and Edwin R. Lundborg, Henry E. Zarlengo, and Edythe S. Miller, as members of said Commission**

(580 P.2d 381)

Decided May 1, 1978.                    Rehearing denied July 10, 1978.

Lynn A. Hammond, City Attorney, Roger Clark, Assistant, Glenn G. Saunders, Special Counsel for plaintiff-appellee.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Eugene C. Cavaliere, Assistant for defendants-appellants.

John J. Conway, for amicus curiae Colorado Rural Electric Association.

A. E. March, Jr., for amicus curiae The City of Fort Collins.

Susan K. Griffiths, for amicus curiae Colorado Municipal League.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

In this appeal, the Public Utilities Commission (PUC) challenges the trial court's judgment which ordered that the PUC cease any attempt to regulate electrical services provided by the City of Loveland to customers outside its boundaries. We reverse the judgment of the trial court.

Since 1930, when the City of Loveland applied to the PUC and received certification to serve an area outside its boundaries, the municipally-owned facilities have supplied electric power to customers outside the city limits in the certificated area.

On December 5, 1975, Richard S. Jung, Director of Finance for the City of Loveland, submitted an advice letter to the PUC in which he requested that rates be increased for customers outside the city,[1] and that the rates become effective without a hearing upon the expiration of the statutory thirty-day notice period. Instead, the PUC suspended the effective date of the tariffs and set a hearing in March 1976 to consider the proposed tariff revisions. On the date set, no one appeared for Loveland, although the Loveland officials had been notified of the hearing. Only members of the PUC staff testified at the hearing.

---

[1] According to the advice letter, the proposed increases would have provided $29,579 of additional revenue for Loveland.

The hearing examiner made findings of fact which were set out in Recommended Decision No. 88678 of May 4, 1976. He found that in the past Loveland had filed with the PUC tariffs and annual reports relating to service for customers outside the city limits, and he concluded that the PUC had jurisdiction over services provided to customers outside city boundaries. The financial data and other information filed in support of the revised tariffs were found to be deficient and also contained many discrepancies. They were unacceptable as a basis for justifying higher rates. Loveland officials also displayed an inability or unwillingness to assist the PUC staff members who sought their help in attempting to explain or complete the inadequate and contradictory information. In light of the foregoing facts, the examiner concluded that Loveland had failed to justify the proposed increase by showing that the requested rates were just and reasonable and that Loveland had not complied with reasonable requests for full disclosure. Because he concluded that the tariffs would not be in the public interest, the hearing examiner recommended that the tariffs be "permanently suspended and canceled." By operation of law,[2] this decision was adopted by the PUC and became final on June 23, 1976.

On May 10, 1976, the PUC became aware that Loveland was collecting the proposed higher rates from its out-of-city customers. It issued a *supoena duces tecum* to Loveland for documents showing rates charged to out-of-city customers since January 1, 1976. Loveland's Director of Finance Jung refused to comply with the subpoena and informed the PUC that he was withdrawing the advice letter on behalf of Loveland and that he had been without authority to submit such a letter in the first place. He also expressed the view that the PUC lacked jurisdiction over the City's electrical services to its out-of-city customers. The PUC treated Jung's letter as a motion to withdraw the advice letter and denied that motion on June 1, 1976.

On June 11, 1976, Loveland filed suit in district court to enjoin further PUC interference in this matter. The PUC counterclaimed to enjoin Loveland from collecting the revised rates from its out-of-city customers, to order Loveland to refund any excess rates already collected, and to penalize Loveland each day it continued to collect the increased rates. On October 8, 1976, the trial court rendered judgment in favor of Loveland and dismissed the PUC's counterclaims. The court found that Article V, Sec. 35 of the Colorado Constitution prohibits special commissions from interfering with municipal property, and that the PUC's regulation of rates charged by municipally-owned operations to customers outside the city's boundaries was such an interference. It further held that the surplus electrical energy generated by municipal facilities is property belonging to

---

[2] Section 40-6-109(2), C.R.S. 1973.

the city over which the PUC had no jurisdiction.

The issue on this appeal is whether the PUC has authority to set rates for electricity provided by municipally-owned facilities to consumers outside the city limits. On behalf of the City of Loveland, it is argued that the commission's regulation of municipally-owned facilities, whether serving customers inside or outside the city boundaries, is prohibited by Article V, Section 35 of the Colorado Constitution. We reject this argument.

The PUC has been delegated the power to regulate rates charged by public utilities. Section 40-3-102, C.R.S. 1973. "Public utility" is defined as including a "municipality operating for the purpose of supplying the public for domestic, mechanical, or public uses." Section 40-1-103, C.R.S. 1973. The PUC decision included a finding of fact that "The City [of Loveland] operates an Electric Department for the purpose of supplying electrical energy to the public for domestic, mechanical, or public uses within the meaning of 40-1-103, C.R.S. 1973." Loveland's electrical facility clearly falls within the statutory definition of a public utility. *See Public Utilities Commission v. Loveland,* 87 Colo. 556, 289 P. 1090 (1930). *See also Robinson v. Boulder,* 190 Colo. 357, 547 P.2d 228 (1976).

To facilitate supervision of public utility rates by the PUC, public utilities are required to file rate schedules and proposed tariff changes with the PUC. Sections 40-3-103 and 40-3-104, C.R.S. 1973. The City of Loveland has been filing such rate schedules with the PUC since it obtained a certificate of convenience and necessity in 1930 for service outside its boundaries. On its own motion the PUC may suspend a proposed tariff, hold a hearing on the proposal and, if necessary, cancel an unreasonable proposed rate. Section 40-6-111, C.R.S. 1973.

In challenging the PUC's regulation of rates, Loveland relies on Article V, Section 35 of the Colorado Constitution, which states: "The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

It is clear from our case law interpreting this provision that the PUC may not constitutionally regulate utilities operated by a municipality within its boundaries. The PUC may not interfere with municipal decisions about purchasing, selling or building public utilities facilities. *K.C. Electric Association v. Public Utilities Commission,* 191 Colo. 96, 550 P.2d 871 (1976); *City of Thornton v. Public Utilities Commission,* 157 Colo. 188, 402 P.2d 194 (1965); *People ex rel. PUC v. Loveland,* 76 Colo. 188, 230 P. 399 (1924). Nor may the PUC set rates within municipal boundaries in cities which are served by municipally-owned facilities. *Town of Holyoke v. Smith,* 75 Colo. 286, 226 P. 158 (1924).

However, our cases have permitted the PUC to regulate municipally-owned public utilities to the extent of their operations outside city boundaries. *K.C. Electric Assoc. v. PUC, supra* (dictum); *City and County of Denver v. Public Utilities Commission,* 181 Colo. 38, 507 P.2d 871 (1973); *City of Lamar v. Town of Wiley,* 80 Colo. 18, 248 P. 1009 (1926); *Holyoke v. Smith, supra* (dictum). In the *City of Lamar* case, we specifically held that the PUC has jurisdiction over services provided by municipal utilities to customers outside city boundaries. Like Loveland here, the City of Lamar had filed with the commission a schedule of increased rates to be charged for electricity provided by the municipal power plant both to the citizens of Lamar and to residents of the Town of Wiley. By operation of law, rates took effect after the expiration of the thirty-day notice period provided by statute. The Town of Wiley challenged the increased rates on the ground that the PUC had no jurisdiction to impose rates on Wiley for services rendered by the Lamar-owned electrical plant. The Town of Wiley relied on *Holyoke v. Smith, supra,* which held that the PUC had no jurisdiction over rates charged for municipally-owned utilities within municipal boundaries.

In *Holyoke,* this court in construing Article V, Section 35 of the Colorado Constitution, considered its historical background and the mischiefs against which it was intended to guard. There we stated that the intention of the framers of the constitution had been to prevent legislative interference in "municipal matters," which "properly fall within the domain of local self-government." After noting that the fixing of rates to be charged by lighting plant owned and operated by a municipality is a municipal function, the court observed that supervision of municipally-owned utilities is unnecessary since the customers are citizens of the municipality and can protest oppressive rates or poor management by recalling city officials or voting them out of office at an election.

In *City of Lamar,* the court used this observation to distinguish the case of non-resident customers of municipally-owned utilities, who have no more voice in the management of the utility than have customers of privately owned and operated utilities. Consumers without an opportunity to control the utility need the protection of the PUC to prevent oppressive rates. In summary, this court in the *City of Lamar* case stated:

"We . . . hold that where a municipality, as owner of a public utility, furnishes the commodity in question to its own citizens and inhabitants, consumers within the municipal limits, the city itself, through its proper officers, possesses the sole power to fix rates. When a municipality, . . . furnishes public service to its own citizens and in connection therewith supplies its products to consumers outside of its own territorial boundaries, the function it thereby performs, . . . in supplying outside consumers with a public utility, is and should be attended with the same conditions and be subject to the same control and supervision that apply to a private

public utility owner who furnishes like service." 80 Colo. at 23.

In *City and County of Denver v. Public Utilities Commission, supra,* this court relied on the *City of Lamar* case in holding that the PUC had jurisdiction to compel Denver to restore public transportation service outside of Denver. Denver had just purchased the Denver Tramway Company facilities and had applied to transfer its certificates of convenience and necessity to the City and County of Denver. The certificates covered services supplied outside of Denver. Denver then moved to withdraw its application for transfer of the certificates and halted transportation service to areas outside of Denver. The PUC denied Denver's motion to withdraw the transfer application and ordered Denver to resume service to outlying areas. Most recently, in *K.C. Electric Association v. Public Utilities Commission, supra,* we explained *City and County of Denver v. Public Utilities Commission, supra,* as follows:

"We concluded that while Denver had complete, exclusive control over operations of its bus system within the City and County of Denver, once the busses crossed the municipal borders, the PUC could exercise jurisdiction. *Accord: City of Lamar v. Town of Wiley,* 80 Colo. 18, 248 P. 1009 (1926)."

Appellee Loveland and the trial court below relied on *Englewood v. Denver,* 123 Colo. 290, 229 P.2d 667 (1951) in which we held that the PUC did not have authority to supervise the sale of water owned by Denver to the City of Englewood. The sale of Denver water was part of an agreement with Englewood to obtain an easement for Denver water lines. We held that Denver was not acting as a public utility because it had not "staked out" Englewood as an area to be serviced by Denver facilities, and therefore the PUC had no authority to regulate. As we noted in *City and County of Denver v. Public Utilities Commission, supra, Englewood v. Denver* is still the law as it relates to its particular facts, but we do not regard it as valuable precedent for this case. *See also Robinson v. City of Boulder,* 190 Colo. 357, 547 P.2d 228 (1976).

We believe it is essential that the PUC be allowed to regulate the public utility services provided by municipalities outside their boundaries. Not only is the PUC the only protection for the non-resident customers, as noted in *Holyoke v. Smith, supra, City of Lamar v. Town of Wiley, supra,* and *K.C. Electric Association v. PUC, supra,* but the PUC must also be allowed the power to resolve jurisdictional disputes between municipalities and private utilities companies over who is to serve areas outside municipal boundaries. *See Public Utilities Commission v. Loveland,* 87 Colo. 556, 289 P. 1090 (1930).

The judgment of the trial court is reversed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES do not participate.