**UNION RURAL ELECTRIC ASSOCIATION, INC., Petitioner,**

**v.**

**The TOWN OF FREDERICK, Colorado, Board of Trustees of the Town of Frederick, Colorado, Holly Hall, Beulah Meeker, John DiGregoria, Paul DiPaolo, Emilio Ruscitti, Deryl Collier and Carmen DeSantis, As Mayor and Members of the Board of Trustees of the Town of Frederick, Colorado, Respondents.**

No. 81SC116.

Supreme Court of Colorado, En Banc.

Sept. 26, 1983.

Rehearing Denied Oct. 17, 1983.

Walker Miller, Alfred T. McDonnell, Greeley, for petitioner.

Leroy Pete Goter, Frederick, for respondents.

Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, for Colorado Ass'n of Mun. Utilities, amicus curiae.

Susan K. Griffiths, Denver, for Colorado Mun. League, amicus curiae.

Randolph W. Starr, Loveland, for Poudre Valley Elec. Ass'n, Inc., amicus curiae.

Robert T. James, Colorado Springs, for Mountain View Elec. Ass'n, Inc., amicus curiae.

John J. Conway, Denver, for Colorado Rural Elec. Ass'n, amicus curiae.

ERICKSON, Chief Justice.

We granted certiorari to review *Union Rural Electric Association, Inc. v. Town of Frederick,* 629 P.2d 1093 (Colo.App.1981). The issue on appeal is whether a municipali-

ty's extension of electric service to new customers within an annexed area constitutes a taking without due process of law of a public utility's pre-existing right to service a certificated area. The Court of Appeals upheld the district court's denial of injunctive relief to the petitioner, Union Rural Electric Association, Inc. (Union), a public utility. We affirm.

I.

Union is an electric utility serving an area adjacent to Frederick, Colorado pursuant to a certificate of public convenience and necessity issued by the Public Utilities Commission (PUC). Frederick operates a municipally owned electric utility. After annexing two tracts of land included in Union's certificated territory, Frederick extended utility service from its municipal facilities into the annexed area which had been served by Union. The municipal utility ran its lines to a church and a subdivision in the annexed area even though Union had already installed lines near both properties. In extending the lines into the annexed area, Frederick sought only to provide electric service requested by new customers within the areas annexed to the town.[1]

Union brought suit to enjoin Frederick from providing electric service in Union's certificated territory, claiming that the extension of service infringed upon its absolute right to serve the certificated territory. Conversely, Frederick claimed that the annexations brought the areas within the municipality's jurisdiction, which it was then free to serve. According to Frederick, it need not observe Union's territorial boundaries under the certificate of public convenience and necessity because Article XXV of the Colorado Constitution excludes municipally owned utilities from the jurisdiction of the PUC. The district court agreed with Frederick and denied Union's application for injunctive relief and the Court of Appeals affirmed. We agree with the Court of Appeals. In our view, the constitutional constraints on the PUC's jurisdic-

tion limit the PUC's authority to regulate municipally owned utilities operating within the municipality. Therefore, the grant of the certificate of public convenience and necessity to Union to provide electric service within the certificated area operates only to preclude other similarly certificated public utilities within the PUC's jurisdiction from interfering with Union's right to provide service.

II.

■ The Colorado Constitution specifically limits the jurisdiction of the PUC. By limiting the PUC's jurisdiction, the Constitution correspondingly restricts the scope of the rights granted by the PUC to public utilities. There are two constitutional provisions which circumscribe specifically the jurisdiction of the PUC and are, therefore, dispositive of the issues raised in this case. First, Article V, § 35 of the Colorado Constitution provides:

"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

In *Town of Holyoke v. Smith,* 75 Colo. 286, 226 P. 158 (1924), this court held that Article V, § 35 constitutionally prohibited PUC regulation of municipal utilities operating within municipal boundaries. The rationale underlying the decision was that:

"On principle it would seem entirely unnecessary to give a commission authority to regulate the rates of a municipally owned utility. The only parties to be affected by the rates are the municipality and its citizens, and, since the municipal government is chosen by the people, they need no protection by an outside body. If the rates for electric light or power are not satisfactory to a majority of the citizens, they can easily effect a change,

---

1. Because Frederick is not taking existing customers from Union, we do not decide whether

such action would constitute a taking of a property right requiring compensation.

either at a regular election, or by the exercise of the right of recall."

*Id.* at 296, 226 P. at 161. Two years later, in *City of Lamar v. Town of Wiley,* 80 Colo. 18, 248 P. 1009 (1926), we recognized once again the general proposition that the PUC may not regulate municipal utilities furnishing utility service to its own citizens within the territorial boundaries of the municipality.

█ It was against this backdrop that in 1954 Article XXV of the Colorado Constitution was added. It provides:

"In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situate or operating within the State of Colorado, whether within or without a home rule city or home rule town, as a public utility, as presently or as may hereafter be defined as a public utility by the laws of the State of Colorado, is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

"Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; provided however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, *that nothing herein shall be construed to apply to municipally owned utilities.*"

(Emphasis added.) The first paragraph of Article XXV grants to the General Assembly the power to regulate public utilities within home rule cities, a power which had belonged exclusively to home rule cities where the utility was local in use and ex-

tent. *City and County of Denver v. Public Utilities Commission,* 181 Colo. 38, 507 P.2d 871 (1973). The final clause in paragraph two of Article XXV has been interpreted to restrict the powers conferred on the PUC in the first paragraph.[2] In *City and County of Denver, supra,* we stated that:

"The last clause merely says in effect that although the power to regulate *public utilities* within home rules cities is transferred to the General Assembly, there is no intention to give the General Assembly authority to regulate a *municipally* owned utility *within* the corporate limits of the municipality."

*Id.* at 46, 507 P.2d at 875 (emphasis in original). In *K.C. Electric v. Public Utilities Commission,* 191 Colo. 96, 550 P.2d 871 (1976), we again considered the question of the PUC's authority to regulate a municipally owned utility acting for the benefit of its citizens. In *K.C. Electric, supra,* we reaffirmed once again the general principles set forth in *City of Lamar, supra,* and *Town of Holyoke, supra,* and declared that when a "municipally owned utility operates within the municipality, there is no one who needs the protections of the PUC. The electorate of the city exercises ultimate power and control over the city-run utility and if the people are in any way dissatisfied with the operation of the utility, they may demonstrate their discontents at the next municipal election." *Id.* at 100, 550 P.2d at 873–4. *See also United States Disposal Systems v. Northglenn,* 193 Colo. 277, 567 P.2d 365 (1977).

Finally, in *City of Loveland v. Public Utilities Commission,* 195 Colo. 298, 580 P.2d 381 (1978), we reemphasized the distinction that is of critical importance in this case. In *City of Loveland,* we recognized that the PUC may regulate municipally owned public utilities outside the city boundaries, but again stated that the PUC may not constitutionally regulate utilities operated by a municipality within its borders.

---

**2.** The pertinent language of the provision states: "[T]hat nothing herein shall be constru-

ed to apply to municipally owned utilities.

## III.

At no time have we wavered from the principle that the Colorado Constitution specifically circumscribes the jurisdiction of the PUC. *Colo. Const.* art. V, § 35, and art. XXV. These jurisdictional limitations, moreover, necessarily restrict the scope of rights that the PUC may grant to public utilities. The PUC, in short, cannot grant a publicly owned utility greater rights than are available under the Colorado Constitution.

Union contends that its certificate of public convenience and necessity carries with it an exclusive right to provide service to the certificated area to the exclusion of all other utilities, including municipally owned utilities operating within municipal limits. We agree with Union that once an area has been certified by the PUC to one public utility, the commission may not certificate another public utility to service that same area. *Public Utilities Commission v. Home Light & Power Co.,* 163 Colo. 72, 428 P.2d 928 (1967). To this extent, Union's right to serve the area is a property right which may not be taken from it except by due process of law. *Western Colorado Power Co. v. Public Utilities Commission,* 163 Colo. 61, 428 P.2d 922 (1967). The extent of the right, however, is not so great that municipally owned utilities, not within the jurisdiction of the PUC, are precluded from providing electric service to new customers within their municipal limits.[3]

*Western Colorado Power Co., supra,* and *Public Utilities Commission v. Home Light and Power Co., supra,* provide the basis for Union's general contention that a certificate of public convenience and necessity vests the utility with a protectable property right to provide utility service in a certificated area to the exclusion of competing public utilities. In each of these cases, however, the competing utility was within the constitutional jurisdiction of the PUC. In this case, Frederick, the competing utility, was beyond the jurisdiction of the PUC.

Frederick was well within its rights as a municipality when it annexed the adjacent territory. Similarly, there is no doubt that Frederick had a constitutional right to construct and operate a municipally owned facility to furnish utility service to customers within its corporate limits. It is axiomatic that a municipality may furnish utility service to new customers within its municipal boundaries even where there is a public utility already operating within the corporate boundaries. *Public Utilities Commission v. City of Loveland,* 76 Colo. 188, 230 P. 399 (1924). In *City of Loveland, supra,* we stated:

> "We are not, however, willing to assent to the proposition that, because private capital has invested in a public utility, a municipality may not lawfully and justly provide a like utility for the benefit of its citizens. To hold the contrary would be to assert that no competition in the furnishing of light, power, gas, water, and kindred matters should be allowed, once a plant has been provided to supply any of them."

*Id.* at 190, 230 P. at 400. Under the Colorado Constitution and case law, Union could not have had a reasonable expectation that the certificate of convenience and necessity that it received from the PUC would immunize it from competing municipalities within Union's certificated territory. *See Knoxville Water Co. v. City of Knoxville,* 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353 (1906). Although an electric utility may be subject to a municipality's power of eminent domain, competition by a municipality with a certificated public utility for new customers does not under these circumstances constitute a taking of property which requires compensation. *United States Disposal Systems v. Northglenn,* 193 Colo. 277, 567 P.2d

---

3. The only recognized exception to this rule is that the PUC may grant a certificate to a competing public utility when the original certificated utility is either unwilling or unable to service an existing or newly-developing area. *Town of Fountain v. Public Utilities Commission,* 167 Colo. 302, 447 P.2d 527 (1968). *Cf.* as an exception, section 40–10–105, C.R.S.1973, which changed motor carrier standards from a regulated monopoly to regulated competition. *Miller Bros., Inc. v. Public Utilities Commission,* 185 Colo. 414, 525 P.2d 443 (1974).

365 (1977). We hold, therefore, that Frederick's annexing of the adjacent territory and its subsequent furnishing of electric service as requested by new customers within the annexed territory was proper and did not constitute a taking of Union's property without due process of law.

Accordingly, the judgment of the court of appeals is affirmed.