**DURANGO TRANSPORTATION, INC.,**
**Plaintiff–Appellant,**

v.

**CITY OF DURANGO, the Board of County Commissioners of the County of La Plata and Durango Transit Advisory Board, Defendants–Appellees.**

**No. 88CA0165.**

Colorado Court of Appeals,
Div. II.

June 1, 1989.

Rehearing Denied Aug. 3, 1989.

Certiorari Granted Jan. 16, 1990.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Law Office of Nancy P. Bigbee, Nancy P. Bigbee, Denver, for plaintiff-appellant.

Smith & West, David P. Smith, Durango, for defendants-appellees.

Gerald E. Dahl, Denver, for amicus curiae Colorado Municipal League.

Opinion by Judge FISCHBACH.

Durango Transportation, Inc. (DTI) brought this suit seeking damages and an injunction against defendants—the City of Durango (the City), the Board of County Commissioners of La Plata County (the County), and the Durango Transit Advisory Board—alleging that they were infringing on DTI's authority to operate mass transportation within La Plata County. After a

bench trial, the trial court dismissed the complaint. DTI appeals that judgment, primarily asserting that the trial court erred in holding that the Public Utilities Commission (PUC) has no jurisdiction over the City and County's joint operation of a mass transportation system within La Plata County. We reverse on this issue and otherwise affirm.

DTI holds a certificate of necessity and convenience from the PUC authorizing it to operate as a common carrier of passengers and baggage between all points in La Plata County. The City sought authority to operate mass transportation both within the City and between the City and La Plata County Airport and Purgatory Ski Area. The City initially negotiated an agreement with DTI to purchase that part of the company's PUC authority thought necessary to operate call and demand service between the City and the airport and ski area. All parties were aware that no PUC authority was necessary for the City to operate a mass transportation system within City limits.

DTI agreed to seek PUC approval for transfer of the routes outside the city. The parties also agreed that the City had the option to purchase the remainder of DTI's certificate of convenience and necessity. In addition to the lump sum consideration of $50,000, the City promised to pay DTI a percentage of its operating revenue or expenses for all routes "operated by the City for which a PUC authority is required."

Ultimately, after the City perceived that buying only the airport and ski area routes might require passengers to change buses at the City's perimeter, it chose to exercise its option to purchase DTI's entire certificate of transportation within La Plata County. In the amended application for transfer of PUC authority, which incorporated the City's exercise of the option, both parties acknowledged that the City had authority independent of the PUC to operate wholly within its boundaries, which authority would remain unaffected by the transfer.

Several weeks after this amended application was submitted, DTI wrote to the City stating that it would transfer only the airport and ski area routes. The City treated the letter as an anticipatory repudiation and rescinded the contract.

After rescinding the contract, the City entered into an Intergovernmental Agreement with the County to operate mass transportation routes outside the City limits. They have operated pursuant to the agreement since its date of execution.

I.

DTI first contends that the trial court erred in concluding that the City and County's joint operation of a mass transportation system within the territorial boundaries of the county is free from the jurisdiction of the PUC. Defendants, on the other hand, maintain that the trial court's conclusion was correct. They assert that both the City and County are constitutionally or statutorily exempt from PUC jurisdiction for operations within their respective territories, that both are authorized and encouraged to enter into intergovernmental agreements, and that they are consequently exempt from PUC authority for operating jointly. Because we reject defendants' first premise, we agree with DTI.

The jurisdiction of the PUC is set forth in Colo. Const. art. XXV:

"In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rules and charges ... [of] a public utility ... is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

"Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; provided, however, ... that nothing herein shall be construed to apply to municipally owned utilities."

The exemption for municipally owned utilities has been construed to extend only to operations within the municipality's ter-

ritorial boundaries, *City & County of Denver v. Public Utilities Commission,* 181 Colo. 38, 507 P.2d 871 (1973), unless there is explicit statutory authority for a municipality's exercise of a particular power beyond its boundaries and explicit statutory exemption from PUC authority. *See Board of County Commissioners v. Denver Board of Water Commissioners,* 718 P.2d 235 (Colo.1986).

■ The defendants assert that the exemption of municipalities from PUC jurisdiction for operating public utilities within their boundaries applies to counties. We disagree.

"Municipality" is not defined in the Colorado Constitution itself. However, its repeated use in Colo. Const. art. XX concerning home rule cities and towns and its absence from Colo. Const. art. XIV concerning counties (except in reference to cities and towns) lend credence to the view that "municipality" refers only to cities and towns. The statutory definition confirms this view: " 'Municipality' means a city or town, and, in addition, means a city or town incorporated prior to July 3, 1877, whether or not reorganized, and any city, town, or [combined] city and county which has chosen to adopt a home rule charter pursuant to the provisions of Article XX of the state constitution." Section 31-1-101(6), C.R.S. (1986 Repl.Vol. 12B).

Defendants also argue that even if the constitutional provision does not expressly exempt counties from the jurisdictional control of the PUC vis a vis public utilities, § 30-11-101(1)(f), C.R.S. (1986 Repl.Vol. 12A), by empowering counties "[t]o develop, maintain and operate mass transportation systems," does imply such an exemption. We reject the implication.

It is presumed that the General Assembly, in enacting a statute, intended to comply with the Colorado Constitution. Section 2-4-201(1)(a), C.R.S. (1980 Repl.Vol. 1B). Thus, a construction of a statute that would raise a conflict between the statute and the constitution should be avoided if the statute is reasonably susceptible to construction in harmony with the constitution. *Ohmie v. Martinez,* 141 Colo. 480, 349 P.2d

131 (1960). If a general statutory provision conflicts with a special or local statutory provision, it shall be construed, if possible, so that effect is given to both. Section 2-4-205, C.R.S. (1980 Repl.Vol. 1B).

Colo. Const. art. XXV and § 40-1-101, et seq., C.R.S. (1984 Repl.Vol. 17) vest in the PUC authority to regulate the facilities, service, rates, and charges of the public utilities with certain exemptions, including one for municipal utilities. Section 40-10-102, C.R.S. (1984 Repl.Vol. 17) provides that all motor vehicle carriers are public utilities within the meaning of the act, and a motor vehicle carrier is defined as "every person ... owning, controlling, operating or managing any motor vehicle used in serving the public in the business of the transportation of persons or property ... for compensation as a common carrier over any public highway...." Section 40-10-101(4)(a), C.R.S. (1984 Repl.Vol. 17). " 'Person' means any individual, partnership, corporation, company, association, joint stock association, or other legal entity." Section 40-10-101(5), C.R.S. (1984 Repl.Vol. 17).

Section 30-11-101(1)(f), cited by defendants, empowers counties "[t]o develop, maintain and operate mass transportation systems, either individually or jointly with any government or political subdivision pursuant to the provisions of part 2 of article 1 of title 29, C.R.S.1973." Section 29-1-203, C.R.S. (1986 Repl.Vol. 12A), in turn, endorses intergovernmental cooperation in general, subject to other legal provisions for special types of agreements.

■ Construing the constitution and statutes to give effect to all their provisions, we conclude that the General Assembly has empowered counties to provide mass transportation systems subject to regulation by the PUC.

■ Our conclusion is supported by the purpose of Colorado's system of regulated competition applicable to motor vehicle carriers. At the heart of the system, as codified in § 40-10-105(2), C.R.S. (1984 Repl.Vol. 17), is the "obligation to safeguard the general public against the im-

paired services and/or higher rates accompanying destructive or excessive competition." *Morey v. Public Utilities Commission*, 629 P.2d 1061 (Colo.1981). Because of this obligation, the PUC can require a carrier to serve unprofitable routes that are important to certain segments of the population as a condition of granting it authority to operate more lucrative routes. *See City & County of Denver v. Public Utilities Commission, supra.* If a county were entitled unilaterally, without any input from the PUC, to displace an existing, certificated common carrier on the most widely traveled routes at the most favorable times, then an existing common carrier could be forced out of business and the PUC would have no means of securing service for rural routes.

We note, in addition, that when the General Assembly has intended to grant an exemption from PUC authority, it has done so expressly. Sections 40–1–103, 40–1.1–101, et seq., C.R.S. (1984 Repl.Vol. 17); *see Board of County Commissioners v. Denver Board of Water Commissioners, supra* (referring to § 31–35–402(1)(f), C.R.S. (1986 Repl.Vol. 12B)); *Matthews v. Tri-County Water Conservancy District*, 200 Colo. 202, 613 P.2d 889 (Colo.1980) (referring to § 37–45–107, C.R.S.). No such exemption is provided for the operation of mass transportation by a county.

We recognize that the PUC, at least by Interim Order, has exempted counties from PUC regulation under a broad interpretation of "municipality." *See Durango Transportation v. City of Durango* (PUC Decision # R85–1179–I, Sept. 20, 1985). While in the case of an ambiguous statute we would defer to the expertise of the commission, *see* § 2–4–203(8), C.R.S. (1980 Repl.Vol. 1B), here, we find no such ambiguity. Colo. Const. art. XXV and § 40–1–101, et seq, C.R.S. (1984 Repl.Vol. 17) establish a comprehensive scheme for the regulation of public utilities. *Board of County Commissioners v. Denver Board of Water Commissioners, supra.* Nowhere in the constitution or statutes has the General Assembly excluded counties seeking to provide common carrier service from the regulatory system. Accordingly,

in the face of the comprehensive scheme established by the General Assembly, neither we nor the PUC is free to infer an unarticulated exemption.

Because we have concluded that counties operating as common carriers are subject to the jurisdiction of the PUC, and because prior decisions have established that cities are subject to PUC jurisdiction when operating as common carriers outside their own territorial boundaries, *see City & County of Denver v. Public Utilities Commission, supra*, it necessarily follows that in jointly providing common carrier service within La Plata County, the County and City are subject to the jurisdiction of the PUC. The defendants do not argue that they have not been operating as common carriers. Thus, in failing to secure PUC authority for their common carrier service, the defendants have been in violation of § 40–10–101, et seq., C.R.S. (1984 Repl.Vol. 17).

## II.

■ DTI next asserts that, because the defendants have been illegally operating common carrier service, it is entitled to an injunction and damages pursuant to § 40–10–115(4), C.R.S. (1984 Repl.Vol. 17), and that the trial court erred in failing to so order. On this issue, we remand for further findings.

Section 40–10–115(4) provides:

"Any person injured by such noncompliance of any motor vehicle carrier with the provisions of this article ... may apply to any court of competent jurisdiction for the enforcement thereof, and the court has jurisdiction to enforce obedience thereto by injunction or other proper process ... and any person so injured shall likewise have a cause of action in damages and be privileged to pursue the usual and proper remedies to redress the same as in like cases provided by law."

Pursuant to this statute, DTI has the right to seek, and the trial court the power to order, both an injunction and damages for defendants' operations without PUC authority. *See Don Ward, Inc. v. Miller*, 154 Colo. 370, 390 P.2d 812 (1964). Because of

its holding that the defendants had not violated the statutory provisions governing public utilities, the trial court made no findings concerning the necessity of an injunction nor concerning the existence of damages to DTI from defendants' operations. Therefore, the matter must be remanded to the trial court for findings on these matters.

### III.

■ Finally, DTI contends that the trial court erred in ruling that its letter to the City—in which it expressed its willingness to sell only the airport and ski area routes and refused to allow the City to exercise its option to purchase the balance of DTI's PUC authority—was an anticipatory repudiation which entitled the City to rescind the agreement. We disagree.

■ " 'In order to constitute an anticipatory breach of contract there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arises.' " *Johnson v. Benson,* 725 P.2d 21 (Colo.App.1986), *quoting* 4 A. Corbin, *Contracts* § 973 (1951). After a repudiation, the non-breaching party is entitled to treat the contract as terminated, even though there has been part performance. *See Johnson v. Benson, supra; Heating & Plumbing Engineers, Inc. v. H.J. Wilson,* 698 P.2d 1364 (Colo.App.1984). To the extent that either party has performed, he may recover for the value of his services in quantum meruit. *See Johnson v. Bovee,* 40 Colo.App. 317, 574 P.2d 513 (1978).

Here, DTI's letter stated that the position of the president of the company was that:

"there is no consideration from the City for the option discussed in the contract ... that the contract insofar as it attempts to spell out some compensation for the remainder of his certificate is unconscionable and confiscatory; and that [the president] will not transfer the remainder of his certificate to the City under these circumstances."

This letter evinces an unequivocal manifestation of intent not to honor the option portion of the contract, and the trial court did not err in finding it to have constituted an anticipatory repudiation. *See Johnson v. Benson, supra.*

DTI's assertion that the City could not rescind because DTI had already fully performed is also without merit. Its repudiation was a declaration that it would not give the required final authority to the PUC to transfer the routes covered by the option.

The judgment of the trial court is affirmed with respect to its ruling that DTI breached its contract with the City entitling the City to rescind the agreement. With respect to its holding that the City and County's joint operation of a mass transportation system within La Plata County is exempt from the jurisdiction of the PUC, the judgment is reversed, and the cause is remanded for further findings as to whether DTI should be granted an injunction and damages against the defendants as a result of defendants' unauthorized operations.

SMITH and STERNBERG, JJ., concur.

### OPINION DISSENTING TO DENIAL OF REHEARING

STERNBERG, Judge, dissenting from the denial of petition for rehearing.

I would grant the petition for rehearing and, therefore, withdraw my concurrence in the original opinion.

I disagree with the holding that the Public Utilities Commission has jurisdiction to regulate counties operating mass transit systems within their political boundaries.

Colo. Const. art. XXV provides, in effect, that the Public Utilities Commission does not have jurisdiction over "municipally owned utilities," and that nothing in the article shall "affect the power of municipalities...." The term municipality can be interpreted narrowly to include only cities and towns, or more broadly to cover counties. *See* 1 E. McQuillin, *Municipal Corporations* §§ 246, 246(a) and 2:23 (3rd ed. 1987). The majority opinion would limit this language to apply to cities and towns and not to counties. I would give a broad-

er meaning to the term and, in this usage, would interpret it to include counties.

We are required to interpret ambiguities by considering the object to be attained, the consequences of a particular construction, and the administrative construction thereof. *See* § 2–4–203, C.R.S.; *City & County of Denver v. Industrial Commission*, 690 P.2d 199 (Colo.1984). The interpretation I urge would give proper deference to the construction of Article XXV which, we are informed, has been followed by the Public Utilities Commission for many years.

Moreover, we must look to the rationale behind the constitutional exemption of public utilities from regulation by the Public Utilities Commission. In *Town of Holyoke v. Smith*, 75 Colo. 286, 226 P. 158 (1924), the court explained:

"On principle it would seem entirely unnecessary to give a commission authority to regulate the rates of a municipally owned utility. The only parties to be affected by the rates are the municipality and its citizens, and, since the municipal government is chosen by the people, they need no protection by an outside body. If the rates for electric light or power are not satisfactory to a majority of the citizens, they can easily effect a change, either at a regular election, or by the exercise of the right of recall."

*See also Union Rural Electric Ass'n v. Town of Frederick*, 670 P.2d 4 (Colo.1983); *City of Loveland v. Public Utilities Commission*, 195 Colo. 298, 580 P.2d 381 (1978); *K.C. Electric Ass'n v. Public Utilities Commission*, 191 Colo. 96, 550 P.2d 871 (1976); and *City & County of Denver v. Public Utilities Commission*, 181 Colo. 38, 507 P.2d 871 (1973). This rationale is as applicable to counties as it is to cities.

For these reasons I would hold that a county is not subject to regulation by the Public Utilities Commission in the operation of a mass transportation system within its territorial boundaries.